■ TEDDY PINDUS et al., Plaintiffs, v NEWMAT LEASING CORP. et al., Defendants. DOLPHIN MANAGEMENT CORP. et al., Appellants; HERBERT BAR-BANEL et al., Respondents.—In a surplus money proceeding arising upon foreclosure of a mortgage, Dolphin Management Corp., Weslip Realty Corp. and Russ, Weyl & Levitt, Esqs., appeal from so much of an order of the Supreme Court, Nassau County, entered June 7, 1978, as (1) confirmed the report of the Referee allocating the surplus moneys, (2) denied the appellants' cross motion to modify the Referee's report so as to deny recovery to the respondent judgment creditor Herbert Barbanel and to grant recovery to the appellants, (3) granted the Referee, Irving Tenenbaum, a $5,000 fee for his services, and (4) awarded Barbanel's attorney, Nathaniel Carmen, $20,440 in payment of a judgment obtained against defendant Mideastern Development Corporation, a prior owner of the mortgaged property. Weslip Realty Corp. also appeals from an order of the same court, dated August 15, 1978, which denied its motion to, *inter alia,* vacate an ex parte order of the same court, entered April 19, 1977, which awarded tenants of the mortgaged premises proportions of their rent security deposits pursuant to a Referee's report and awarded the Referee, Irving Tenenbaum, a $10,000 fee for his services out of the surplus moneys. Order entered June 7, 1978 modified, on the law, by deleting Item No. 7 of the fourth decretal paragraph thereof. As so modified, said order affirmed insofar as appealed from, without costs or disbursements, and matter remitted to Special Term for further proceedings in accordance herewith. Order dated August 15, 1978 affirmed, without costs or disbursements. On October 22, 1972 the plaintiffs, Teddy and Gerald Pindus, commenced an action to foreclose a third mortgage on an apartment house in Long Beach, New York. On October 27, 1972 a receiver was appointed to collect unpaid rents and profits. On January 16, 1973 Mordecai Dancis was appointed Referee to compute the amount due on the note and mortgage being foreclosed. The defendant Mideastern Development Corporation subsequently conveyed its fee interest in the subject premises to the appellant Weslip Realty Corporation. The deed was recorded in the office of the Clerk of the County of Nassau at 9:16 A.M. on March 29, 1973. On the same day, at 11:00 A.M., the property was sold to Weslip at a public auction pursuant to a judgment of foreclosure. Weslip bid $133,525 for the property and later assigned its bid to the appellant Dolphin Management Corporation. At the closing of title, which took place on April 16, 1973, Dolphin raised objections to certain delinquencies, the most notable of which are an open water tax bill of more than $6,000, delinquencies on the first and second mortgages, and one half of the April, 1973 rent. On account of these objections, the closing took place with an agreement that only $100,000 of the total $133,525 would be paid to the plaintiffs. The remainder was to be retained by the Referee until either final agreement among all of the parties or the final order of the court. On May 8, 1973 the Referee, Dancis, consented to a distribution of the moneys to the plaintiffs without Dolphin's consent. The Referee's report, dated May 14, 1973, was not filed until March, 1975. Confirmation of the foreclosure sale was filed on or about

March 10, 1975. On September 6, 1973 the respondent Herbert Barbanel had entered a $15,994 judgment against Mideastern. The judgment was docketed in the office of the Nassau County Clerk on September 10, 1973. On or about February 6, 1975, Dolphin and Weslip moved, *inter alia,* to direct the plaintiffs to pay into court the money which the Referee had distributed to them without the movants' consent and to direct the receiver to pay into court the rents he had collected. In an order entered June 16, 1976, Special Term decreed that the Treasurer of Nassau County was to retain (1) approximately $30,000, to be paid over by the plaintiffs, in a surplus money fund and (2) approximately $13,000, to be paid over by the receiver, in a fund denominated "security deposits". The respondent Irving Tenenbaum was appointed Referee to hear and determine the rights of claimants to the surplus moneys and the rights of tenants in the subject premises to the unallocated security deposits. Tenenbaum, who has practiced law for 40 years, spent more than 85 hours determining the rights of tenants to the security deposits. He held 12 hearings and 43 claimants appeared before him. Tenenbaum subsequently submitted an ex parte application, dated April 14, 1977, for a Referee's fee of $10,000. In an order entered April 19, 1977, Special Term confirmed Tenenbaum's allocation of the security deposits and awarded him a $10,000 fee out of the surplus money fund. With respect to the surplus moneys, Tenenbaum held hearings on December 1, 1977 and January 11, 1978 and filed a report dated March 22, 1978. His report, insofar as it is pertinent to this appeal, permitted the judgment creditor Barbanel to recover and denied the claims of Dolphin, Weslip and their attorneys, Russ, Weyl & Levitt. Tenenbaum's affirmation of services states that he spent in excess of 55 hours rendering his services and requests a fee of $5,000. By notice of motion dated March 24, 1978, Tenenbaum moved to confirm the report. Dolphin, Weslip, and Russ, Weyl & Levitt cross-moved to modify the report so as to deny recovery to Barbanel and grant recovery to themselves. In an order entered June 7, 1978, Special Term, *inter alia,* confirmed Tenenbaum's report in all respects, awarded a Referee's fee of $5,000, denied the cross motion, and ordered that any surplus money remaining after payment of all amounts set forth in the order was to be paid to Russ, Weyl & Levitt. Dolphin, Weslip, and Russ, Weyl & Levitt appeal from this order. By order to show cause dated June 19, 1978, Weslip moved, *inter alia,* to vacate so much of the order of April 19, 1977 as awarded Tenenbaum a $10,000 fee for allocating the security deposits. In an order dated August 15, 1978, Sepcial Term denied the motion. Weslip appeals from this order. The respondent judgment creditor Herbert Barbanel is not entitled to share in the surplus moneys. Only those judgments and liens which existed upon the property at the time of the foreclosure sale constitute liens against the surplus moneys *(Douglass v Chisholm,* 142 Misc 869, affd 236 App Div 668, affd 261 NY 632). In the case at bar, Mideastern deeded its fee interest in the subject premises to Weslip in March, 1973, and Barbanel's judgment against Mideastern was docketed in September, 1973. Thus, Barbanel never acquired a proper lien since Mideastern, the party against whom the judgment debt was entered, did not own the property at the time of entry. Barbanel's contention that Mideasterns' conveyance to Weslip is a nullity because there is no proof of consideration fails because the deed had already been executed at the time it was challenged (see *Young Foundation Corp. v Ottaviano, Inc.,* 29 Misc 2d 302, 304, affd 15 AD2d 517). Dolphin, the ultimate purchaser at the foreclosure sale, is entitled to claim the surplus money as an owner. CPLR 5236 has eliminated the equity of redemption and permits the purchaser at a judicial

sale to take immediate title (see Legislative Studies and Reports, McKinney's Cons Laws of NY, Book 7B, CPLR 5236, p 430; 15 Carmody-Wait 2d, NY Prac, § 92:434; 6 Weinstein-Korn-Miller, NY Civ Prac, par 5236.02). Following the above principle, Weslip's claim of entitlement to the surplus money on the ground that it is the owner of the equity of redemption cannot stand. However, Weslip, as purchaser of the property before the foreclosure sale, has an equitable lien on the property to the extent of its down payment (see *Davison v MacDonald,* 124 Misc 726, 729, affd 216 App Div 759). The appellant law firm, Russ, Weyl & Levitt, is entitled to counsel fees since it is a party which "has obtained a decree which creates a fund in which others may share" (see *Sadow v Poskin Realty Corp.,* 63 Misc 2d 499, 507). The matter must be remitted to Special Term so that the moneys previously awarded to Herbert Barbanel may be equitably redistributed among the appellants. We have examined the Referee's fees and find that they were reasonably predicated upon the time, labor and skill required and were not disproportionate to the amount involved in the proceeding (see *First Fed. Sav. & Loan Assn. of Port Washington v McKee,* 61 Misc 2d 693, 694). O'Connor, J. P., Gulotta, Margett and Mangano, JJ., concur.