**In re Carolyn Sue GILMORE, Debtor.**

**Katheryn A. MOORE, Plaintiff/Appellee,**

v.

**Carolyn Sue GILMORE, Defendant/Appellant,**

v.

**Douglas H. LEMON, Third Party Defendant.**

No. C–83–232.

United States District Court, E.D. Washington.

July 6, 1983.

Michael D. Finney, Walters, Whitaker, Finney & Falk, Yakima, for plaintiff/appellee.

Robert B. Royal, Porter, Schwab & Royal, Yakima, for defendant/appellant.

## ORDER

Robert J. McNICHOLS, Chief Judge.

The essential facts in this appeal from the bankruptcy court are not in dispute. Appellant Gilmore's husband had incurred debts which resulted in a workman's lien being placed on the couple's home.[1] On April 17, 1981 the lien was reduced to judgment. On June 26, 1981 a sheriff's sale was conducted and the creditor, Mr. Lemon, bid in the amount of his judgment. The sale was confirmed by the state court on July 10, 1981.[2] On May 25, 1982 Mrs. Gilmore filed a Chapter 13 wage-earner plan. Two days later, on May 27, 1982 Mr. Lemon sold his interest in the property to Mrs. Moore.[3] It appears to be uncontested that Mr. Lemon's investment consisted of the satisfaction of his judgment in the amount of $6,456, curing approximately $3,000 in arrearages on the underlying mortgage, and assuming the remaining balance of the mortgage in the approximate amount of $17,000 for a total investment of $26,456.[4] The fair market value (FMV) of the home was estimated

---

1. The Gilmore's subsequently divorced in July of 1982. Although the record is silent, it will be assumed that Mr. Gilmore's interest, if any, in the home, plays no part in these bankruptcy proceedings.

2. By way of affidavit, Mrs. Gilmore contends that notice of the sale was kept from her by her ex-husband. She does not suggest, however, that she was ignorant of the proceedings in which the lien was reduced to judgment, or that she was unaware that the judgment made specific provision for sale of the home if not otherwise satisfied. In that regard, this matter is distinguishable from *Mennonite Board of Missions v. Adams*, —— U.S. ——, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). If in fact the claimed lack of actual notice would rise to the level of a due process violation, there is Washington precedent for the proposition that the confirmation hearing would be, and still is, subject to reopening under Rule 60(b). *Commercial Co. v. Hermann Co.*, 22 Wash.App. 963, 593 P.2d 1332 (1979).

3. During oral argument, it was represented that neither Mr. Lemon nor Mrs. Moore were aware of the bankruptcy proceedings.

4. Counsel for Mrs. Moore suggests in brief that Mr. Lemon's actual investment was $23,456. This figure may have resulted from an oversight in failing to compute the $3,000 in arrearages, or it may be that these past due amounts were already included in the $17,000 balance. In either event, the outcome of this decision would not be impacted.

by Mr. Lemon at $35,000 and by Mrs. Gilmore at $42,000. The price actually paid, therefore, represents somewhere between 63 and 76 percent of FMV.

Mrs. Gilmore asserts that this percentage range does not constitute "reasonably equivalent value" within the meaning of 11 U.S.C. § 548.[5] The bankruptcy court granted Mrs. Moore summary judgment on the basis that the foreclosure sale was not a "transfer" within the meaning of the Act, and thus found it unnecessary to reach the question of value.[6]

At the outset, I will assume without deciding that the sale constituted a transfer. The Act defines that term as follows:

> "[T]ransfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property . . . ."

11 U.S.C. § 101(41).

This language may well be sufficiently broad to encompass the divestiture of a debtor's interest in property resulting from a foreclosure sale thereby triggering the inquiries contained in § 548.[7] Cf., In re Worcester, 28 B.R. 910, 914 (Bkrtcy.C.D.Cal. 1983).

**5.** (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

\* \* \* \* \* \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation incurred, or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548.

**6.** The second prong of § 548(a), i.e., whether the debtor was insolvent at the time of the transfer or became so as a result of the transfer, does not appear to have been addressed by the parties.

**7.** Technically, title does not pass under Washington law until such time as a sheriff's deed issues at the end of the redemption period. Prince v. Savage, 29 Wash.App. 201, 205, 627 P.2d 996, rev. denied, 96 Wash.2d 1002 (1981).

The leading case in point emanating from this Circuit is In re Madrid, 21 B.R. 424 (Bkrtcy.App., 9th Cir.1982), appeal pending. In rejecting the mechanical analysis urged by the debtor, which would merely compare the price actually paid with FMV, the Court held:

> If we consider the question of price adequacy in the context of foreclosure law we find, not surprisingly, that mere inadequacy will not upset a foreclosure sale. "[T]here must be in addition proof of some element of fraud, unfairness or oppression as accounts for and brings about the inadequacy of price." . . .
>
> The law of foreclosure should be harmonized with the law of fraudulent conveyances. Compatible results can be obtained by construing the reasonably equivalent value requirement of Code § 548(a)(2) to mean the same as the consideration received at a non-collusive and regularly conducted foreclosure sale. Thus, in the absence of defects, such foreclosure withstands avoidance as a fraudulent conveyance.

21 B.R. at 427 (citations omitted).[8]

Adding impetus to the force of Madrid is the observation that in that case, the debtor was attempting to avoid a transfer resulting from non-judicial foreclosure of a deed

The purchaser takes only an inchoate interest which may be wholly defeated through the exercise of redemption rights and legal title remains vested in the judgment debtor during the pendency of the statutory period. W.T. Watts, Inc. v. Sherrer, 89 Wash.2d 245, 248, 571 P.2d 203 (1977). This presents some interesting questions since it would appear that under Washington law the trustee in the instant case took legal title and not merely a power of redemption under authority of 11 U.S.C. § 541(a). Stated another way, it could be argued that the "transfer" did not occur until after the petition had been filed. Had the parties raised the issue, it would have been necessary to construe and apply 11 U.S.C. § 549(c) to determine whether this twist would affect the outcome. However, the argument has not been raised, and I decline to do so sua sponte.

**8.** The Court was construing Nevada law. The Washington approach is not dissimilar. Osner & Mehlhorn v. Loewe, 111 Wash. 550, 555, 191 P. 746 (1920).

of trust. In the instant matter, the debtor had available a myriad of state-imposed protections. The lien was judicially reduced to judgment. The sale was regularly conducted by a public officer, and thereafter judicially confirmed pursuant to RCW § 6.24.100. At all stages of the proceedings the debtor was free to present such legal and equitable defenses as may have been available to her. Further, as noted previously, the debtor, and her estate, enjoyed a one-year statutory redemption period. Under these facts and circumstances, the rationale of *Madrid* is persuasive indeed.

To give effect to debtor's position would be tantamount to extending Washington's redemption period from one year to almost two. No doubt Congress has the power to pre-empt state policy and to accomplish exactly that result. I am not persuaded, however, that such congressional intent is implicit in § 548. The Act is replete with examples demonstrating precisely the opposite intent, particularly in terms of avoidance powers conferred upon the trustee,[9] and the better reasoned approach would be that promulgated in *Madrid; i.e.,* federal bankruptcy law should be harmonized with local law unless to do so would seriously compromise federal objectives.

Within the context of the instant factual scenario, it is not difficult to envision debtor's position as obtaining a result detrimental to state and federal concerns alike. If the existing one-year statutory redemption period is a factor affecting the price a bidder is willing to pay at a foreclosure sale,[10] then it would follow that a two-year redemption/avoidance period would have a similar, but more pronounced, impact. A bidder at a forced sale, knowing that the judgment debtor would have a year in which to redeem, and then potentially an additional year in which to avoid the sale if he or she should file bankruptcy, would adjust his bid accordingly to reflect the risks. In so doing, the bid price would invariably be even more disparate from the FMV obtainable in an armslength transaction. This in turn would place the trustee in an even stronger position to raise § 548. The bidder, recognizing the specter of interminable delay and legal costs in protecting his investment during possible bankruptcy proceedings, would thus be inclined to bid even less. In short, we would be faced with an ever-spiraling dilemma feeding upon itself to the detriment of both the parties immediately concerned and the interests of society in promoting a predictable scheme of satisfying judgments and ascertaining title to real property.

This is not to say that *Madrid* should be read as standing for a per se rule that a state determination of regularity in a sale should necessarily be issue preclusive in subsequent bankruptcy proceedings. No doubt occasions could arise where a foreclosure sale would be so oppressive or otherwise inequitable that it would simply be unconscionable to let the result stand. *See, e.g., In re Richard,* 26 B.R. 560, 561 (Bkrtcy D. Rhode Island 1983). Where a bankruptcy court has a reasonable basis for believing that considerations exist which would warrant reopening a confirmation hearing under applicable state law, then *Madrid* would not preclude inquiry into the underlying facts. See *In re Worcester, supra,* 28 B.R. at 915–16. This is not such a case. For reasons outlined, the debtor here had access to the full panoply of protections afforded judgment debtors under Washington law and failed to avail herself of them. Collateral attack at this point would be inappropriate.[11]

---

9. *See, e.g.,* 11 U.S.C. §§ 544(a)(3), 545(2), 546(b), and 549(c).

10. A defeasible inchoate interest obviously will generally be less valuable than a present vested right to possession. *Cf., Abramson v. Lakewood Bank & Trust,* 647 F.2d 547, 550 (5th Cir.1981) (dissenting opinion), *cert. denied,* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982).

11. As mentioned in note 2, *supra,* appellant has made a belated and rather half-hearted attempt to raise a due process argument as to her actual knowledge of the sheriff's sale. The information furnished in support of that contention is too lacking in depth to afford a basis for predicting whether reopening the confirmation hearing would meet with any success under a Rule 60 motion. Should appellant wish

THEREFORE IT IS ORDERED that the bankruptcy court's grant of summary judgment is AFFIRMED.

---

to pursue this avenue, a brief stay would seem advisable.