**In the Matter of Claudette FRANK, Debtor.**

**Claudette FRANK, Plaintiff,**

**v.**

**Milton BERLIN and the Bank of New York, Defendants.**

Bankruptcy No. 183–30836–16.
Adversary No. 183–0374–16.

United States Bankruptcy Court,
E.D. New York.

April 18, 1984.

Frank X. Kilgannon, Mineola, N.Y. by Daniel P. Buttafuoco, Bethpage, N.Y., for plaintiff.

Stim & Warmuth, P.C. by Joseph D. Stim, Huntington, N.Y., for defendants.

MANUEL J. PRICE, Bankruptcy Judge.

This is an adversary proceeding brought by the debtor in possession, Claudette Frank, ("Frank," the "plaintiff," or "debtor") pursuant to section 1107(a) of the Bankruptcy Reform Act of 1978, (the "Code") 11 U.S.C. § 1107(a), to set aside the sheriff's sale of her share in a one family residence located at 67 Colonial Drive, Massapequa, New York, owned by her and her husband, Albert Frank, to the defendant, Milton Berlin, ("Berlin," or the "defendant") on the ground that the sale constituted either a fraudulent conveyance, a preferential transfer, or a transaction which violated her homestead rights under state law.

At a hearing held on November 1, 1983, (Transcript "Tr." 11/1/83), the plaintiff's action was heard together with a motion by the defendant to dismiss the Chapter 11 proceeding for the debtor's failure to submit a plan as required by section 1106(5) of the Code. I denied his motion at that time and only the plaintiff's action is to be decided here.

The facts, as stipulated by the parties, adduced at trial, and indicated from the files, are as follows:

On December 28, 1978, the Bank of New York, (the "Bank," or "creditor") obtained a default judgment for $3,019.82 against Claudette Frank and her husband. Mrs. Frank, who is a native of Trinidad, has had little formal education. Her husband, a seaman, spent much of his time away from home at sea. The Bank had obtained the obligation on which the judgment was based in 1977 by way of an assignment from a company known as Trisun Corp., from which the Franks had purchased aluminum siding on credit in order to make repairs on their home. On February 23, 1979, the judgment was docketed in the Clerk's Office of Nassau County and thus became a lien on the Franks' real property which consisted of their marital residence.

After the Bank docketed the judgment, the debtor continued to live in the premises and to make payments which significantly reduced the amount owed. Nonetheless, on January 25, 1983, with a balance outstanding of $1,024.96, the Bank caused the sheriff to conduct an auction sale of the Franks' home. (Tr. 11/1/83, p. 11) This sale took place pursuant to an order issued by Justice Arthur D. Spatt, of the New York Supreme Court, Nassau County, on July 23, 1982 which authorized the Bank to issue an execution against the real property of the Franks. The order provided that: "from the first proceeds of such sale, money, not exceeding $10,000 be paid to the judgment debtors as representing their interest in the proceeds." (Defendant's Exhibit 2) It was issued pursuant to section 5206(e) of the New York Civil Practice Law and Rules (CPLR) which provides for the sale of homesteads. According to this section:

"A judgment creditor may commence a special proceeding in the county in which the homestead is located against the judgment debtor for the sale, by a sheriff or receiver, of a homestead exceeding ten thousand dollars in value. The court may direct that the notice of petition be served upon any other person. The court, if it directs such a sale, shall so marshal the proceeds of the sale that the right and interest of each person in the

proceeds shall correspond as nearly as may be to his right and interest in the property sold. Money, not exceeding ten thousand dollars, paid to a judgment debtor, as representing his interest in the proceeds, is exempt for one year after the payment, unless, before the expiration of the year, he acquires an exempt homestead, in which case, the exemption ceases with respect to so much of the money as was not expended for the purchase of that property; and the exemption of the property so acquired extends to every debt against which the property sold was exempt."

N.Y.Civ.Prac.Law & R. § 5206(e) (McKinney 1978).

■ The defendant was the only bidder at the sale, the Franks themselves did not attend, and he obtained the property for $500. The parties have stipulated that at the time of the sale the fair market value of the property was $55,000. (Tr. 11/1/83, p. 15) It was subject to a mortgage held by the Bowery Savings Bank of $30,621.77; a mortgage held by the Nassau County Department of Social Services of $2,448.85; a tax lien of $120.02; a mechanic's lien of $534.05, and judgment liens totalling $8,583. (Debtor's Schedule A–3, Proofs of Claim and stipulation Tr. 11/1/83, pp. 16, 22) The liens and encumbrances therefore amounted to $42,307.69 which, taken from the $55,000 stipulated fair market price, left the Franks with an equity of $12,692.31 and the debtor, Claudette Frank, with an equity of $6,346.15. According to New York State law, however, as provided in CPLR § 5203(a)3, Berlin took the property free of judgment liens. *See May v. Finnerty*, 104 Misc.2d 450, 428 N.Y.S.2d 570, 571 (Sup.Ct.1980) and *First Federal Savings & Loan Association of Port Washington v. McKee*, 61 Misc.2d 693, 305 N.Y.S.2d 589 (Sup.Ct.1969). Consequently, he received a piece of property which had an equity of $21,275.31 for a bid of $500.

On February 4, 1983, the sheriff issued a deed to the property (Defendant's Exhibit 1) to Berlin and it was recorded in the Nassau County Clerk's Office on March 7, 1983. (Tr. 11/1/83, p. 12) The proceeds of the sale were disbursed according to the court order and a check for $175.29 was sent to the Franks to cover their homestead exemption. The plaintiff denied receiving this check and it was conceded at the trial that it was never cashed. The Bank's attorneys received the remaining $324.71 to reimburse them for the expenses of the sale. (*Id.* pp. 13–14) Although the debtor contends that her husband was at sea and thus was never served with the summons in the Bank's action against him and that the underlying judgment, and consequently the sale of his share of the property which they held as tenants by the entirety, is therefore void, no action was taken by them in state court to vacate the judgment or the sale. (*Id.* pp. 5–6) Instead, on April 25, 1983, less than two months after the deed was recorded, the debtor filed an individual petition for relief under Chapter 11 of the Code and on August 4, 1983, as the debtor in possession, asserting the powers of a trustee under section 1107(a), she filed the complaint herein to have the conveyance of her share set aside.

Section 1107(a) of the Code, 11 U.S.C. § 1107(a) enables a debtor in possession to assert the powers of a trustee. This section provides:

"Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter."

■ By filing her petition for relief under Chapter 11, the debtor, as debtor in possession, assumed the right to pursue avoidance actions under section 547(b) and section 548(a) of the Code. The cause of action she most vigorously pursues is that of the fraudulent conveyance of her interest in the property under section 548(a).

*Fraudulent Conveyance*

Section 548(a) of the Code provides that: "The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured."

■ Although her complaint states that the sale was made with the "actual intent to hinder, delay or defraud" creditors under section 548(a)(1), she failed to allege any facts either in the complaint or the post-trial memorandum, to support this assertion which in any case hardly seems appropriate for an involuntary transfer to a stranger. That claim must therefore be rejected. The plaintiff also claims, however, that the sale constituted a fraudulent conveyance under section 548(a)(2) insofar as the debtor did not receive "reasonably equivalent value" for the transfer within the meaning of section 548(a)(2)(A).

In response, the defendant argues that the transfer to him cannot be avoided because it should be deemed to have been made beyond the one year period within which such conveyances are vulnerable to attack. He contends that the time of the transfer should be deemed to relate back to the time when the judgment against the debtor and her husband was docketed by the bank. Defendant's Post Trial Memorandum, pp. 10–11.

In addition, he maintains that any consideration at a forced sale, not otherwise improper, should be regarded as conclusively "equivalent value" under section 548(a)(2)(A). *Id.*, pp. 4–9.

The case at bar, therefore, brings two interesting and important questions before the court, namely: (1) whether the time of the transfer to Berlin at the sheriff's sale should relate back to the time when the bank docketed its judgment which created a lien on the property, or whether the transfer took place at the time of the sale and the delivery of the deed to him by the sheriff, and (2) whether the price recovered at the sheriff's sale should necessarily be deemed to be reasonably "equivalent value" within the meaning of section 548(a)(2)(A) or whether it should be examined on a case by case basis.

*Time of Transfer*

It is well established that under sections 548(a) and 547(b) involuntary as well as voluntary transfers may be avoided, since the Code's definition of "transfer" includes involuntary transactions. According to section 101(40), " 'transfer' means every mode, direct or indirect, absolute or conditional, *voluntary or involuntary*, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." S.Rep. 95–989, 95th Cong., 2d Sess. 27 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5813. (emphasis added)

The courts have construed a transfer, as defined in section 101(40) of the Code, which replaced section 1(30) of the Bankruptcy Act of 1898 as amended, former Title 11 § 1(30) (the "Act"), to include the attachment of liens as well as forced sales and they have made clear that such transfers are to be construed as having been made by the debtor. *See Abramson v.*

*Lakewood Bank & Trust Co.,* 647 F.2d 547, 548 (5th Cir.1981); *Durrett v. Washington National Insurance Co.,* 621 F.2d 201, 204 (5th Cir.1980); *In re Wheeler,* 34 B.R. 818, 820 (Bkrtcy.N.D.Ala.1983); *In re Berge,* 33 B.R. 642, 648 (Bkrtcy.W.D.Wis. 1983); *In re Bates,* 32 B.R. 40, 41 (Bkrtcy. E.D.Cal.1983); *In re Coleman,* 21 B.R. 832 (Bkrtcy.S.D.Tex.1982) (cases determining that nonjudicial foreclosure sales constitute "transfer" under section 548(a)); *In re Carr,* 34 B.R. 653, 656 (Bkrtcy.D.Conn. 1983) (strict foreclosure sale is transfer); *In re Ewing,* 33 B.R. 288, 291–292 (Bkrtcy. W.D.P.A.1983) (involuntary sale of stock); *In re Gilmore,* 31 B.R. 615, 617 (D.C.E.D. Wash.1983); *In re Evans,* 30 B.R. 744, 745 (Bkrtcy.N.D.Ohio 1983) (judicial lien as transfer under section 547(b)); *In re Worcester,* 28 B.R. 910, 914 (Bkrtcy.C.D. Cal.1983) (transfer includes disposition of debtor's equity); *In re Richard,* 26 B.R. 560 (Bkrtcy.D.R.I.1983) (sheriff's sale is transfer); *In re Maytag Sales and Service, Inc.,* 23 B.R. 384, 388 (Bkrtcy.N.D.Ga.1982) (garnishment of debtor's bank account is transfer under section 547(b)); *In re Perdido Bay Country Club Estates, Inc.,* 23 B.R. 36 (Bkrtcy.S.D.Fla.1982) (transfer of title at foreclosure sale is transfer); *In re Smith,* 21 B.R. 345, 351 (Bkrtcy.M.D.Fla. 1982) (sheriff's sale of debtor's home was transfer); *In re Suppa,* 8 B.R. 720, 722 (Bkrtcy.D.R.I.1981) (attachment of judgment lien is a transfer under section 547(b)). *But see In re Madrid,* 725 F.2d 1197, 1202 (9th Cir.1984) where the court found that a foreclosure sale based upon a previously conveyed deed of trust is not a transfer by a debtor but "an involuntary conveyance triggered by the debtor's failure to fulfill some obligation in the promissory note secured by a mortgage or deed of trust." *See also* 4 Collier on Bankruptcy ¶ 547.11 (15th ed. 1980).

The defendant does not dispute that the sheriff's sale of the Franks' property constituted a transfer by the debtor, but he maintains that the time of the transfer to him should be deemed to relate back to February 23, 1979 when the Bank docketed its judgment. Since the debtor filed her petition on April 25, 1983, that would place the transfer well beyond the one year period of vulnerability under section 548(a). To support his contention, the defendant refers to a decision of an Alaskan Bankruptcy Court, *In re Alsop,* 14 B.R. 982 (Bkrtcy.D.Alaska 1981). This decision was affirmed by the U.S. District Court for Alaska, *In re Alsop,* 22 B.R. 1017 (D.C. Alaska 1982), and its reasoning was adopted by the Ninth Circuit Court of Appeals in *In re Madrid,* 725 F.2d 1197 (9th Cir.1984), a decision which is in conflict with the approach taken by two Fifth Circuit Court of Appeals decisions, *Durrett v. Washington National Insurance Co.,* supra, and *Abramson v. Lakewood Bank and Trust Co.,* 647 F.2d 547 (5th Cir.1981), cert. denied 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320, as well as most of the lower court decisions which followed.

In *Durrett,* which was brought under section 67d of the Act, former Title 11, § 107d, the court held for the first time that a nonjudicial foreclosure sale to the holder of the trust deed could be set aside as a fraudulent conveyance on the ground that the debtor had failed to receive fair value. Although the trust deed had been executed (the title voluntarily conveyed) beyond the one year period for setting aside fraudulent conveyances, the court took the date of the involuntary sale, which was within one year of the filing of the bankruptcy petition, as the time of the transfer to the defendant buyer. This construction was explained and reaffirmed in *Abramson,* another Act case which set aside a nonjudicial foreclosure sale as a fraudulent conveyance for failure of fair equivalent value.

In re *Alsop,* which the defendant urges this court to follow, and *In re Madrid,* *supra,* involved cases brought by the trustees therein under section 548(a) of the Code, to challenge nonjudicial foreclosure sales to the holders of trust deeds. There the courts refused to allow the trustees to avoid the sales on the ground that the time of the transfers should be deemed to relate back to the time when the deeds were

executed, which happened to have been well beyond the one year period of vulnerability under section 548(a).

In refusing to follow *Durrett* and *Abramson*, the *Alsop* court maintained that those decisions had failed to discuss the effect of section 67d(5) of the Act (which was superseded by section 548(d)(1) of the Code) or the relevant state law concerning perfection, but had instead rested their conclusions on the ground that a foreclosure sale constituted a "transfer" within the meaning of section 1(30) of the Act (section 101(40) of the Code). 14 B.R. at 987.

Section 548(d)(1) of the Code, which replaced section 67d(5) of the Act, requires reference to state law so far as it defines the time of transfer in terms of perfection. This section provides that a transfer is made:

"when such transfer becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer could have been perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer occurs immediately before the date of the filing of the petition."

The *Alsop* court determined that under Alaska state law "the interest of the purchaser at a foreclosure sale is perfected at the time of the recording of the original deed of trust" and that therefore the time of the sale should be deemed to relate back to the time the deed was executed. 14 B.R. at 986.

In affirming the Bankruptcy Court's decision, the District Court of Alaska stated that the transfer had occurred at the time the deed of trust was recorded because "[u]nder Alaska law, a deed of trust becomes perfected against subsequent bona fide purchasers when it is recorded." *In re Alsop*, 22 B.R. at 1018.

In *In re Madrid, supra,* at 1202, which was decided during the pendency of this action, the Ninth Circuit cited *In re Alsop* to note that while a foreclosure sale based upon a deed of trust previously executed, might satisfy the definition of transfer in section 101(4), that definition had to be limited by the definition of transfer in section 548(d)(1) which required a finding that the time of the transfer was the time the deed was executed and not the time of the sale.

The *Alsop* decision was criticized by Judge Glen E. Clark in *In re Richardson,* 23 B.R. 434, 445 (Bkrtcy.D.Utah 1982), a case involving a trustee's successful attempt to set aside a nonjudicial foreclosure sale under section 548(a). According to Judge Clark, the *Alsop* decision "improperly fuses two separate transfers": the transfer to the lender which creates the lien by the voluntary transfer of the deed and the transfer that passes the debtor's equity at the foreclosure sale. 23 B.R. at 445. According to *Richardson*, it is necessary to regard the time of the challenged transfer as the time of the sale because under state law, as applied to section 548(d)(1), the sale to the buyer at the foreclosure sale was perfected only when the sale could have been discovered:

"Under Section 548(d)(1), a transfer challenged under Section 548(a) is made when it 'becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer could have been perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer occurs immediately before the date of the filing of the petition.' In this case, Section 548(d)(1) deems the transfer of the debtors' equity to [the buyer] to have been made when it was so far perfected that a bona fide purchaser from the debtor could not acquire an interest in the debtors' equity superior to [the buyer's] interest. Under Utah law the transfer to [the buyer] was so far perfected that a subsequent purchaser from the debtor could not acquire an interest in the debtors' equity superi-

or to [the buyer's] interest after the sale, when a purchaser, based on the notice of default and the notice of sale, could have discovered the sale. Thus, the transfer was made within one year before the date of the filing of the debtors' petition."

*Id.* at 446. (Judge Clark's subsequent decision to dismiss the trustee's case and to rescind the order to set aside the sale on the ground that the bankruptcy court had no subject matter jurisdiction in view of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *In re Richardson*, 27 B.R. 407 (Bkrtcy.D.Utah 1983), was vacated on appeal by the District Court of Utah, in the companion case *In re Color Craft Press, Ltd.*, 27 B.R. 962 (D.C.Utah 1983)).

Other cases which construe the time of the transfer as the time of the sale following the *Durrett-Abramson* rule, include: *In re Wheeler*, 34 B.R. 818, 821 (Bkrtcy.N. D.Ala.1983); *In re Carr*, 34 B.R. 653 (Bkrtcy.D.Conn.1983); *In re Ewing*, 33 B.R. 288 (Bkrtcy.W.D.Pa.1983); *In re Berge*, 33 B.R. 642, 643–644 (Bkrtcy.W.D. Wis.1983); *In re Gilmore*, 31 B.R. 615, 617 (D.C.E.D.Wash.1983); *In re Bates*, 32 B.R. 40, 41 (Bkrtcy.E.D.Cal.1983); *In re Worcester*, 28 B.R. 910, 912–915 (Bkrtcy.C.D.Cal. 1983); *In re Coleman*, 21 B.R. 832, 833 (Bkrtcy.S.D.Texas 1982). In *In the Matter of Jordan*, 5 B.R. 59, 61 (Bkrtcy.D.N.J. 1980), the court deemed the time of transfer under section 547(b) to be the time the judgment lien was docketed rather than the time the creditor levied on the property, but the issue there was whether the debtor in a Chapter 13 proceeding could avoid the creditor's levy, not whether a sale to a stranger could be set aside.

The facts in the case at bar are distinguishable from those of *Alsop, Madrid,* and *Richardson* since those cases dealt with nonjudicial foreclosure sales based upon prior executions of trust deeds while this matter concerns a sheriff's sale based upon a judgment lien. The defendant in this case held no deed previously transfer-red by the debtor. It is therefore unnecessary for this court to decide between the *Alsop-Madrid* and *Richardson* interpretations on the "time of the transfer" under section 548(d)(1) since it is clear that under that section the time of the transfer to Berlin must be deemed to be the time he recorded the deed because under New York law the title of a buyer at a sheriff's sale is perfected against a subsequent purchaser from the debtor only when he has recorded his deed. Section 291 of New York's Real Property Law provides:

"A conveyance of real property, within the state, on being duly acknowledged by the person executing the same, or proved as required by this chapter, and such acknowledgment or proof duly certified when required by this chapter, may be recorded in the office of the clerk of the county where such real property is situated, and such county clerk shall, upon the request of any party, on tender of the lawful fees therefor, record the same in his said office. Every such conveyance not so recorded is void as against any person who subsequently purchases or acquires by exchange or contracts to purchase or acquire by exchange, the same real property or any portion thereof, or acquires by assignment the rent to accrue therefrom as provided in section two hundred ninety-four-a of the real property law, in good faith and for a valuable consideration, from the same vendor or assignor, his distributees or devisees, and whose conveyance, contract or assignment is first duly recorded, and is void as against the lien upon the same real property or any portion thereof arising from payments made upon the execution of or pursuant to the terms of a contract with the same vendor, his distributees or devisees, if such contract is made in good faith and is first duly recorded."

N.Y.Real Property Law, § 291 (McKinney 1980).

This requirement applies to purchasers at sheriffs' sales as well as other buyers of real property. In upholding a sale to a buyer who recorded a deed which he re-

ceived from a debtor subsequent to a sheriff's sale of the same property to a buyer who recorded the certificate of sale but not the deed, the Appellate Division of the First Department held that the certificate was insufficient notice to a subsequent grantee who would only be put on notice by the recording of the deed:

"[A]fter the lien of the judgment had expired, a [subsequent] purchaser acquiring the property in good faith and without notice, no deed from the sheriff having been recorded, and the purchaser having duly recorded his deed under the Recording Act would acquire a good title to the property."

*Davidson v. Crooks*, 45 A.D. 616, 619, 61 N.Y.S. 362 (1st Dept.1899).

 Although the rights of a buyer at a sheriff's sale relate back to the rights the debtor had at the time the judgment became a lien, the buyer must record the deed to acquire them:

"The execution and delivery of a deed by the sheriff would relate back so as to convey all the right, title and interest of the judgment debtor at the time of the docket of the judgment; but where, by the lapse of time, the lien of the judgment upon the land had ceased and no conveyance or deed executed by the sheriff had been recorded, and where the owner of the land executed a valid conveyance to a third person, who received it for a valuable consideration and without notice of any other conveyance, and duly recorded his deed under the Recording Act, his title would be good."

*Id.* at 620, 61 N.Y.S. 362 citing *Reynolds v. Darling*, 42 Barb. 422 (1864); *see also, Cohen v. East Netherland Holding Co.*, 258 F.2d 14 (2d Cir.1958) (construing "transfer" under section 60d of the Act and section 291 of Real Property Law).

The defendant argues that two New York cases, *Grid Realty Corp. v. Fazzino*, 55 A.D.2d 635, 390 N.Y.S.2d 169 (2d Dept. 1976), *affirmed*, 42 N.Y.2d 1048, 399 N.Y. S.2d 212, 369 N.E.2d 768 (1977), and *Maroney v. Boyle*, 141 N.Y. 462, 36 N.E. 511 (1894), require that the time of the transfer

be deemed to relate back to the time the creditor docketed the judgment. But neither of these cases, which he applies to *Alsop* by analogy, support the theory he proposes. *Grid* concerned the rights of a purchaser at a sheriff's sale whose ownership interest in real property was challenged by a party whose claim derived from a judgment entered subsequent to his purchase. The Appellate Division, Second Department of the New York State Supreme Court held:

"[B]y reason of the protection afforded by the recording act, an innocent purchaser for value, who in good faith acquires title through a sheriff's execution sale, *and records the deed* pursuant thereto, has a right to the property superior to any claim derived through a subsequently entered judgment which declares the judgment debtor's prior record ownership to be, in fact, a mortgage.

\* \* \* \* \* \*

" '[T]he transfer of title is the same as if the sheriff had in fact acted as the authorized attorney of the debtor. The grantee in such cases holds, not under the sheriff, but under the debtor, and *the deed when recorded is protected by, and has the benefit of the recording act.*' " (emphasis added)

390 N.Y.S.2d at 170–171. Quoting *Hetzel v. Barber*, 69 N.Y. 1, 10 (N.Y.1877).

*Maroney v. Boyle* involved a purchaser at a sheriff's sale whose rights were being challenged by a plaintiff holding notes on the property which had been obtained prior to the sale. The court held that "[s]uch a purchaser, *after he obtains the sheriff's deed*, is in the same position as he would have been if the deed had been executed by the judgment debtor at the time the judgment was docketed." 141 N.Y. at 469, 36 N.E. 511 (emphasis added).

Although these cases illustrate the principle that buyers who purchase at sheriffs' sales may obtain rights superior to those who obtain interests prior in time, neither case supports the defendant's theory that the time buyers obtain such rights should

be deemed to be prior to the time they receive the deed or record it. *Maroney* makes clear that the buyer is in a protected position only *"after he obtains the sheriff's deed."* 141 N.Y. at 469, 36 N.E. 511. *Grid* makes clear that a buyer at a sheriff's sale is protected once he *"records the deed."* 390 N.Y.S.2d at 171. (emphasis added)

It is true that under CPLR § 5203 the *creditor* is safe against subsequent transferees of the debtor once he dockets his judgment. This section provides that:

"No transfer of an interest of the judgment debtor in real property, against which property a money judgment may be enforced, is effective against the judgment creditor either from the time of the docketing of the judgment with the clerk of the county in which the property is located until ten years after filing of the judgment-roll, or from the time of the filing with such clerk of a notice of levy pursuant to an execution until the execution is returned, except:

"1. a transfer or the payment of the proceeds of a judicial sale, which shall include an execution sale, in satisfaction either of a judgment previously so docketed or of a judgment where a notice of levy pursuant to an execution thereon was previously so filed; or

"2. a transfer in satisfaction of a mortgage given to secure the payment of the purchase price of the judgment debtor's interest in the property; or

"3. a transfer to a purchaser for value at a judicial sale which shall include an execution sale; or

"4. when the judgment was entered after the death of the judgment debtor; or

"5. when the judgment debtor is the state, an officer, department, board or commission of the state, or a municipal corporation; or

"6. when the judgment debtor is the personal representative of the decedent and the judgment was awarded in an action against him in his representative capacity."

Therefore, under section 548(d)(1), an involuntary transfer of the debtor's interest to the creditor occurs when the creditor dockets his lien. But to deem the time of the transfer to the *buyer* at the sheriff's sale as the time of the transfer to the *creditor* is simply to confuse the two transfers and incorrectly to identify the rights obtained with the time such rights accrued.

■ Since section 548(d)(1) of the Code defines the time of the transfer as the time a transferee is perfected against subsequent buyers, and because a transferee who takes real property at a sheriff's sale is perfected under New York law only once he has recorded his deed, the transfer to Berlin must be deemed to have taken place on March 7, 1983, when he recorded his deed, which was less than two months before the debtor filed her petition. This court must, therefore, decide whether the "debtor received less than a reasonably equivalent value in exchange for such transfer," under section 548(a)(2)(A).

### VALUE

The plaintiff argues that this court should follow the Fifth Circuit Court of Appeals decision, *Durrett v. Washington Co.,* 621 F.2d 201 (5th Cir.1980), which set aside a foreclosure sale for failure of "fair equivalent" value after comparing the sale price ($115,400) to the fair market value of the property sold ($200,000). The value received in that case was 57.7% of the fair market value of the property.

The defendant urges this court to follow instead the decision of the Ninth Circuit Bankruptcy Appellate Panel (the "Panel"), *In re Madrid,* 21 B.R. 424 (Bkrtcy.App. 9th Cir.1982) in which Judge Robert L. Hughes, speaking for the majority of the Panel, had held that any price paid at a nonjudicial foreclosure sale, not otherwise improper, should conclusively be deemed to be equivalent value under section 548(a)(2)(A). According to Judge Hughes, because the mere inadequacy of the price would be insufficient to set aside a foreclosure sale under Nevada and California law,

the sale could not be avoided in bankruptcy under section 548(a).

During the pendency of the case at bar, the Ninth Circuit Court of Appeals, in *In re Madrid*, 725 F.2d 1197 (9th Cir.1984), affirmed the Panel's decision not to set the sale aside.

Although the court noted in dicta that policy considerations supported its decision to uphold the sale, since an opposite finding would create a de facto redemption right which would have a chilling effect on participation at foreclosure sales, *Madrid* at 1202, it studiously avoided basing its decision on the issue of equivalent value and instead based its decision on the narrow issue of time. The court held that the time of the transfer was the time the deed was executed, not the time of the sale; this placed the transfer outside of the one year period of challenge under section 548(a):

> "We agree that the foreclosure sale cannot be set aside, *but do not base our holding on the question of reasonably equivalent value.* We hold that the sale must be upheld because the transfer of the home occurred at the time of perfection of the trust deed, not upon foreclosure." (emphasis added)

*Id.* at 1198.

Consequently, the *Madrid* decision does not create a conflict between the Fifth and Ninth Circuits on the issue of whether the price paid at foreclosure sales should be considered presumptively equivalent value.

The majority of the lower courts which have decided the issue since the *Madrid* Panel decision was rendered have rejected Judge Hughes's interpretation in favor of the *Durrett* approach. *In re Wheeler*, 34 B.R. 818, 821 (Bkrtcy.N.D.Ala.1983); *In re Carr*, 34 B.R. 653 (Bkrtcy.D.Conn.1983); *Matter of Berge*, 33 B.R. 642, 645 (Bkrtcy. W.D.Wis.1983); *In re Ewing*, 33 B.R. 288 (Bkrtcy.W.D.Pa.1983); *In re Bates*, 32 B.R. 40, 41–42 (Bkrtcy.E.D.Cal.1983); ("the Bankruptcy Code preempts state law under these circumstances"); *In re Richard*, 26 B.R. 560 (Bkrtcy.D.R.I.1983); *In re Smith*, 21 B.R. 345 (Bkrtcy.M.D.Fla.1982). *But see In re Worcester*, 28 B.R. 910, 914–915

(Bkrtcy.C.D.Cal.1983) (sale set aside where the debtor's equity was $180,000, sale price was $14,975 (less than 8%) and there was "gross misdescription" of the property making the sale improper under state law); *In re Gilmore*, 31 B.R. 615, 616 (D.C.E.D. Wash.1983) (sheriff's sale not set aside since sale was properly conducted and debtor failed to pursue state remedy to challenge it); *In re Perdido Bay Country Club Estates, Inc.*, 23 B.R. 36, 41 (S.D.Fla. 1982) (debtor estopped by his failure to challenge judicial foreclosure sale in state court).

Most of the decisions favoring the *Durrett* approach involved foreclosure sales but they also include sheriffs' sales of real property, *In re Smith, supra; In re Richard, supra;* the involuntary sale of stock; *In re Ewing, supra,* and strict foreclosure sales, *In re Carr, supra.* The most thorough analysis of the issue, however, is found in Judge Glenn Clark's opinion in *In re Richardson*, 23 B.R. 434, 446 (Bkrtcy.D. Utah 1982), which sets forth several reasons for favoring the *Durrett* approach in a trustee's case to avoid a nonjudicial foreclosure sale. Judge Clark noted that giving presumptive status of "reasonable equivalence" to the price obtained, "proscribes the factual inquiry into 'reasonable equivalence' which Section 548(a)(2) was designed to facilitate." 23 B.R. at 446. In addition, he found that such an approach "reads a good faith" requirement into Section 548(a)(2)(A) "which is inconsistent with Congress' deletion of Section 67's good faith test" and "duplicates rights which the trustee already has under the law of most states through Section 544(b)." *Id.* at 447. According to Judge Clark, "[i]t is unlikely that Section 548(a)(2)(A) was intended to operate merely as a repetition of Section 544(b)." In addition, he criticized giving too much weight to state law which, in sanctioning foreclosure exchanges for less than reasonably equivalent value, may be giving effect to state contracts and foreclosure policy but may "overlook the interests of other creditors of the debtor." According to *Richardson*, "reasonable equiva-

lence should be determined in light of the function of Section 548 in fostering an equitable distribution of the debtor's property." *Id.* Finally, the opinion notes that the policy arguments favoring state law "are not relevant" so far as federal law takes precedence over state law and may lead to results otherwise impermissible outside of the Bankruptcy context:

> "While *Durrett's* application of bankruptcy fraudulent conveyance law to a foreclosure sale may have been unprecedented, there is nothing novel in avoiding transfers under bankruptcy law which are valid under state law .... preference powers cast a cloud over pre-petition transfers which are otherwise invulnerable. Section 545 radically alters state law governing statutory liens."

*Id.* at 448.

Judge Clark concluded that he had no choice but to apply section 548(a) even if it lead to results inconsistent with state law because:

> "When the language of an avoiding power established under Federal Bankruptcy law 'is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms' ... and policy arguments against its enforcement are not relevant."

*Id.* Quoting *Central Trust Co. v. Official Creditors Committee of Geiger Enterprises, Inc.*, 454 U.S. 354, 359–360, 102 S.Ct. 695, 698, 70 L.Ed.2d 542 (1982). Quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).

He added that any uncertainty in the foreclosure market would occur only in cases where the buyer had paid an unreasonable price in which case the result would "not seem unfair." *Id.*

■ Although *Richardson* deals specifically with nonjudicial foreclosure sales, I find its reasoning to be equally applicable to sheriffs' sales based upon judgment liens. *See In re Richard*, 26 B.R. 560 (Bkrtcy.D.R.I.1983) (sheriff's sale set aside under section 548(a) where debtor had an

equity of $3,250 in home valued at $22,500 and sale price was $31). Although New York law does not permit a money judgment sheriffs' sale of real property to be set aside merely because the price is inadequate, *Guardian Loan Co. v. Early*, 47 N.Y.2d 515, 521, 419 N.Y.S.2d 56, 392 N.E.2d 1240 (1979), and provides no right of redemption, *Pindus v. Newmat Leasing Corp.*, 71 A.D.2d 948, 420 N.Y.S.2d 10 (2d Dept.1979); CPLR § 5236, Commentary to CPLR § 5236, "Sale of Real Property upon Execution," by Professor David D. Siegel, N.Y.Civ.Prac.Law & R § 5236 (McKinney 1978), such facts cannot be dispositive for this court must follow the plain language of the federal law and apply that which Congress has established to promote the equal distribution of the debtor's assets to all creditors. Although certain provisions of the Code such as sections 522(b), 544(b), 547(e)(1) and (2), 548(d)(1), may require this court to apply state law, section 548(a)(2)(A) is not one. Consequently, certain transactions are vulnerable to attack as involuntary fraudulent conveyances in the bankruptcy context that are otherwise secure under state law. Since the federal law is preemptive in this area, this court must examine the particular facts of this transaction to determine whether "the debtor received less than reasonably equivalent value" under section 548(a)(2)(A).

## Methods of Computation

■ The courts have used various methods of determining value under section 548(a)(2)(A) (previously 67d of the Act). Some have looked to the fair market value of the property which was sold, *Durrett, Abramson, Wheeler, Bates, Smith;* some have looked to the debtor's equity, *Worcester; Coleman;* some to the buyer's, *Carr, Richardson.* One court set aside a sheriff's sale without deciding which method was correct when the sale price was 1% of the debtor's share of the equity as well as 1% of the fair market value of her share of the property. *In re Richard*, 26 B.R. 560, 562–63 (Bkrtcy.D.R.I.1983). Whatever the method chosen, however, since Mrs. Frank

filed her petition for relief as an individual rather than jointly with her husband, any computation of value must be made according to what she received as her share of the proceeds for her share of the property which was involuntarily conveyed. *See In re Richard*, 26 B.R. 560, 561 (Bkrtcy.D.R.I. 1983) for a case involving very much the same type of facts as in the case at bar.

■ According to the stipulation of the parties, the debtor and her husband had an equity in the property of approximately $12,692.31 (The fair market value of $55,000 less the liens of $42,307.69). Her half-share was therefore $6,346 for which she received $87.50, or one-half of the $175 which was the couple's entitlement according to Judge Spatt's order. Although she apparently refused to cash the check which was sent for this amount, Tr. 11/1/83, p. 3, it would be improper to say that she received nothing for the transfer. Therefore, using these figures and the method of computation most favorable to the defendant which compares the debtor's equity of $6,346 with the price she received, $87.50, the value received was 1.3%. Other methods of computation, based upon the buyer's equity in the debtor's share ($21,275 ÷ 2 = $10,637), or the debtor's share of the stipulated fair market value of the property ($55,000 ÷ 2 = $27,500) produce even lower percentage rates: 0.8% and 0.3% respectively. In fact, even if one-half of the price paid ($250) is compared to the debtor's share of the equity ($6,346), the value was less than 4%. Since I find that under any reasonable method of calculation the debtor received far less than equivalent value, it is unnecessary to decide between their respective merits. The transfer of the debtor's share of the property may be avoided under section 548(a)(2) and the debtor in possession may recover the property from the defendant who is liable under section 550 of the Code. Since there is nothing to suggest that the defendant failed to take the property for value and in good faith, according to section 548(c) of the Code, which provides that the defendant "has a lien on the interest transferred ... and may enforce any obligation incurred ... to the extent that he gave value to the debtor in exchange for the transfer ..." the defendant is entitled to receive $250 since he paid this amount for the debtor's share of the property.

*Preferential Transfer*

Since I have found that the transfer to Berlin is void under section 548(a)(2), it is unnecessary to determine whether a preferential transfer was made under section 547(b) although, in view of the fact that the creditor Bank received nothing from the transfer to Berlin, it would seem unlikely that the transfer qualified as a preference under section 547(b) which allows transfers to be avoided which are:

"(1) to or for the benefit of a creditor;

"(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

"(3) made while the debtor was insolvent;

"(4) made—

"(A) on or within 90 days before the date of the filing of the petition; or

"(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

"(i) was an insider; and

"(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

"(5) that enables such creditor to receive more than such creditor would receive if—

"(A) the case were a case under chapter 7 of this title;

"(B) the transfer had not been made; and

"(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

Having found that the transfer of the debtor's share of the property to Berlin is void under section 548(a)(2) as a fraudulent conveyance, it is unnecessary for me to determine whether the sale should be set

aside as having violated the debtor's homestead exemption provided for by section 5206 of the New York State Civil Practice Law and Rules. Accordingly, judgment is granted for the plaintiff.

Settle judgment in accordance herewith.