In re Joseph ADWAR and Tina Adwar, Debtors.

Joseph ADWAR and Tina Adwar, Plaintiffs,

v.

CAPGRO LEASING CORP., Birchwood Associates and Cars Unlimited, Inc., Defendants.

Bankruptcy No. 884–40885–20.
Adv. No. 884–0213.

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Oct. 22, 1985.

E. Judson Lender, Roslyn, N.Y., for defendants.

Louis P. Rosenberg, Brooklyn, N.Y., for debtors.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

This matter came to be heard upon the motion of Capgro Leasing, Birchwood Associates, and Cars Unlimited, (hereafter defendants), for summary judgment in this Chapter 13 adversary proceeding. Defendants' motion seeks to set aside debtors' complaint that defendants' purchase of debtors' home at a foreclosure sale was a fraudulent conveyance. Defendants argued that since they paid the "reasonably equivalent value" of the property, the purchase was not a fraudulent conveyance. The court rejects defendants' arguments because questions of valuation and fraud remain unresolved. Summary judgment is hereby denied.

FACTS

1. On October 17, 1983, the sheriff of Nassau County conducted a judicial foreclosure sale, and sold a parcel of debtors' real property to defendants.

2. On December 15, 1983, debtors filed a motion to vacate the sheriff's sale in the Supreme Court of New York in Nassau County. On March 16, 1984, Judge Christ denied the motion, and on May 23, 1984, Judge Christ adhered to his original determination after re-argument.

3. On May 25, 1984, debtors filed a Chapter 13 petition for bankruptcy.

4. On July 6, 1984, debtors commenced this adversary proceeding in bankruptcy court to set aside the foreclosure sale of their real property, alleging fraud and inadequacy of price. Debtors allege that due to collusion, defendants purchased the home for .05% of its value.

5. On May 16, 1985, defendants filed this motion for summary judgment.

DISCUSSION

Defendants presented two reasons for summary judgment:

1. Debtors are collaterally stopped from alleging fraud or impropriety in the conduct of the sale because Judge Christ, in Nassau County Supreme Court found "scrupulous adherence to statutory requirements", and

2. Defendants paid enough consideration for debtors' home so that debtors realized the "reasonably equivalent value" of the property. Defendants dispute debtors' assertion that they paid only .05% of fair market value, and argue that they paid between 50% and 100% of the fair market value.

*Reasonably Equivalent Value*

11 U.S.C. § 548(a)(2)(A) allows avoidance of an involuntary sale of a debtor's property if the amount received is "less than a reasonably equivalent value." Three Circuits have reached three different answers to the question of how to apply § 548 to mortgage and judgment foreclosure sales.

The Fifth Circuit Court of Appeals in *Durrett v. Washington National Insurance Co.,* 621 F.2d 201 (5th Cir.1980)[1] held that a debtor could avoid a non judicial foreclosure because the property was sold for only 57.7 percent of its fair market value. In *Durrett,* the Fifth Circuit im-

plied that 70% of fair market value constitutes a property's reasonably equivalent foreclosure value.[2] This argument is problematic for two reasons:

First, a mere percentage test for measuring value does not take mitigating circumstance into account such as the nature of the market. For example, a sale in a wholesale market brings less than one in a retail market. *In re Upham,* 48 B.R. 695 (Bankr.W.D.N.Y.1985). The *foreclosure market* determines the standard for "reasonably equivalent value" of a foreclosure sale; not a mechanical seventy percent extrapolation from an appraisor's approximation of *fair market* value. If a foreclosure market in a city is very strong and regularly brings ninety percent of fair market value, it would be unfair to presume that seventy percent of fair market value is a reasonably equivalent value. Similarly, if a foreclosure market in a city is very weak and regularly brings only fifty percent of fair market value, it would be unfair to presume that seventy percent of fair market value is a reasonably equivalent value.

The second problem with the *Durrett* approach is that many states, (not New York), allow debtors a redemption period to cure defaults and redeem their homes after a judicial foreclosure sale. In states that allow redemption, the prices at foreclosure sales are generally a lower percentage of fair market value than the prices in states that do not offer debtors redemption. *See* Zinman, Houle & Weiss, Fraudulent Transfers According to Alen, Gross and Berowitz: A Tale of Two Circuits, 39 Bus.Law 977 (1984). Therefore, the *Durrett* 70% test could result in the bankruptcy court voiding sales in the states which offer debtors the greatest pre-bankruptcy protection

---

1. Reaffirmed in *Abramson v. Lakewood Bank & Trust Co.,* 647 F.2d 547 (5th Cir.1981). *Matter of Berge,* 33 B.R. 642 (Bankr.W.D.Wisc.1983); *In re Wheeler,* 34 B.R. 818 (Bankr.N.D.Ala.) 1983); *In re Coleman,* 21 B.R. 832 (Bankr.S.D.Tx.1982); *In re Smith,* 21 B.R. 345 (Bankr.M.D.Fla.1982).

2. In *Durrett,* the Fifth Circuit set aside a noncollusive pre-petition foreclosure sale as a fraudulent conveyance under § 67(d) of the for-

mer Bankruptcy Act. Section 67(d) provided in pertinent part:

> 67(d) Every transfer made ... by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against his is fraudulent
> (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration.... Title 11 U.S.C. § 107(d).

(redemption), and approving sales in the states which offer debtors the least pre-bankruptcy protection, (no redemption). This result contradicts the purpose of precluding overreaching that gave rise to 11 U.S.C. § 548.

In contrast to the Fifth Circuit *Durrett* approach, the Ninth Circuit Bankruptcy Appelate Panel held in *In re Madrid,* 21 B.R. 424 (Bankr.App. Panel 9th Cir.1982), *aff'd on other grounds,* 725 F.2d 1197 (9th Cir.1984), cert. den., —— U.S. ——, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984)[3] that a noncollusive regularly conducted mortgage sale pursuant to state law, in and of itself, renders the sale price the fair equivalent of the value of the property. The Ninth Circuit presumes that every foreclosure sale properly conducted under state law brings the reasonably equivalent value of the property sold. By presuming the fairness of all state foreclosure procedures, the Ninth Circuit limits litigants to arguments about the conduct of forclosure sales under state law.

This court disagrees with the Ninth Circuit, because 11 U.S.C. § 548 by its clear language, allows avoidance of sales for reasons not contemplated by many states' laws. For example, 11 U.S.C. § 548 allows the avoidance of involuntary sales both for fraud and inadequacy of price. In contradiction, most states, including New York, allow the avoidance of judicial foreclosure sales for fraud only.[4] *See In re Richardson,* 23 B.R. 434, 447 (Bankr.D.Utah 1982); *In re Richard,* 26 B.R. 560 (Bankr.D.R.I. 1983); *Matter of Frank,* 39 B.R. 166, 176 (Bankr.E.D.N.Y.1984). Therefore, if a sale under New York foreclosure law is conducted lawfully, the *Madrid* approach

would prohibit voiding the sale no matter how inadequate the price received, despite 11 U.S.C. § 548.

Further, state foreclosure laws differ, some offering debtors more protection than others. As stated above, many states allow debtors a redemption period to buy back real property after a foreclosure sale. New York does not. Thus, it is unrealistic to accord the same presumption of fairness to a foreclosure sale in New York as to a foreclosure sale in a state which allows redemption. *See* Alden, Gross, and Borowitz, *Real Property Foreclosure as a Fraudulent Conveyance: Proposals for Solving the Durrett Problem,* 38 Bus.Law 1605 (1983).

In contrast to the Fifth and Ninth Circuits, the Eighth Circuit in *In re Hulm* 738 F.2d 323 (8th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984)[5] held that the question of value should be determined on a case by case basis. The Eighth Circuit offered no formula to ascertain the reasonably equivalent value of real property sold at a mortgage foreclosure sale, and with very little analysis, ruled that an evidentiary hearing is necessary for each case. The United States Supreme Court has not resolved the inconsistencies among the different circuits. Although the *Hulm* and *Madrid* decisions adopt basically irreconcilable approaches to valuation, the Supreme Court denied certiorari in both cases. (The parties in the *Durrett* and *Abramson* cases did not seek Supreme Court review).

We hold that the Second Circuit case by case approach to reasonably equivalent value as presented in *Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d 979 (2nd

---

**3.** *See In re White,* [1984–1985 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 70319 (Bankr.S.D.Tx. 1985); *In re Strauser,* 40 B.R. 868 (Bankr.N.D. Oh.1984); *In re William,* 39 B.R. 678 (D.C.Minn. 1984).

**4.** New York Law does not allow the setting aside of foreclosure sales solely on the basis of inadequate price, *Southold Savings Bank v. Gilligan,* 76 Misc.2d 30, 350 N.Y.S.2d 303 (Sup.Ct. Suffolk 1973); *Bishop v. McTigue,* 210 A.D. 826, 206 N.Y.S. 183 (4th Dept.1924).

**5.** *Matter of Frank,* 39 B.R. 166; *In re Dudley,* 38 B.R. 666 (Bankr.M.D.Pa.1984); *In re Richardson,* 23 B.R. 434; *In re Carr,* 34 B.R. 653 (Bankr. D.Ct.1983); *In re Richard,* 26 B.R. 560; *In re Jones,* 20 B.R. 988, n. 23 (E.D.Pa.1982); Note, The Big Chill: Applicability of Section 548(a)(2) of the Bankruptcy Code to Noncollusive Foreclosure Sales, 53 Fordham L.Rev. 813 (1985).

Cir.1981), a guaranty case, should apply to the mortgage foreclosure context as well, and thus we agree with the Eighth Circuit's *Hulm* approach. *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979 (2nd Cir.1981) is factually a very complex case concerning the measurement of value received by guarantors of debts for the obligations guaranteed. *Rubin* involved a network of corporations that cashed checks, sold money orders, and issued food stamps; largely to poor people who lacked checking accounts. Periodically, Manufacturers Hanover Trust (MHT) lent money to one or another of the interlocking companies to help the check cashing operation distribute cash, and MHT's loans were often guaranteed by other companies within the network. When the network collapsed and entered bankruptcy, the trustee of the bankruptcy estate tried to set aside MHT's liens on the guarantor entities' cash, arguing (1) that the estate needed the money to pay holders of money orders, and, (2) that MHT's loans were fraudulent conveyances because the guarantor entities had not received fair consideration for their guaranty obligations. The District Court found that the guarantees were supported by fair consideration because all of the companies in the network had been operated as one large company and therefore had an "identity of interest." The Second Circuit refused to rely on identity of interest alone to validate affiliate guarantees. Rather, the Circuit Court required a complete factual analysis of the extent to which each guarantor received economic value, directly or indirectly, in exchange for the obligations it guaranteed.

▪ Significantly, the Second Circuit in *Rubin* neither accepted the presumption of identity of interest made by the District Court, nor did the Second Circuit establish any percentage formulas or presumptions of its own to determine whether or not reasonably equivalent value had been received for guarantees made. We hold that the same approach is appropriate to determine whether reasonably equivalent value is obtained at a mortgage foreclosure sale. Although valuation is much simpler in the mortgage foreclosure context than in the *Rubin* context, the unfairness of applying mechanical tests to measure "reasonably equivalent value" is the same for both. In the mortgage foreclosure context, percentage formulas for measuring adequacy of price, (the *Durrett* approach), ignore market differences. Also in the mortgage foreclosure context, the presumption that compliance with state law results in an adequate price, (the *Madrid* approach), ignores the rights of those who live in states like New York which do not recognize inadequacy of consideration as a reason to set aside a foreclosure sale. Thus, the reasoning of *Rubin* compels this court to adopt the case by case approach already adopted in *In re Hulm*.

▪ In this case, motion for summary judgment was made, apparently, to give the court the opportunity to preclude consideration of the facts, if the court chose to apply the formulas of *Durrett* or *Madrid*. Since we reject the *Madrid* and *Durrett* formulas, the case is not ripe for summary judgment. Bankruptcy Rule 7056 incorporates Rule 56(c) of the Federal Rules of Civil Procedure which provides that summary judgment must be rendered:

> if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In this case, the pleadings reveal many factual disputes pertaining to fraud, collusion, and valuation, and accordingly, summary judgment is denied. *See In re Richardson*, 23 B.R. 434, 443.

*Collateral Estoppel*

Defendants also seek summary judgment on the issue of fraud. Defendants argue that the state court judgment rendered by Judge Christ collaterally estops debtors from raising the issue of fraud in bankruptcy court.

Four criteria must be satisfied before collateral estoppel effect may be given to factual issues underlying a prior action:

(1) the issue sought to be precluded must be the same as that involved in the prior action;

(2) that issue must have been actually litigated;

(3) it must have been determined by a valid and final judgment; and

(4) the determination must have been essential to the prior judgment.

*In re Schwartz*, 36 B.R. 355 (Bankr.E.D.N.Y.1984). *In re Graziano*, 35 B.R. 589 (Bankr.E.D.N.Y.1983). *In re Ross*, 602 F.2d 604, 608 (3d Cir.1979); *In re McMillan*, 579 F.2d 289, 291–293 (3d Cir.1978); *Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir.1976).

█ In this case, the issue of fraud was not "actually litigated" in state court. Rather, Judge Christ found that since no showing of "disparity in price" was made, the issue of fraud was precluded:

In the Court's view, there has been no showing of "disparity in price" which is the predicate to a further showing of "fraud, mistake or exploitive overreaching" to entitle movants to the relief they seek.

Since defendants have not shown that the standard Judge Christ used to find no "disparity in price" is consistent with the principles of 11 U.S.C. § 548(a)(2)(A), we cannot rule that the issue of fraud should be precluded. Further, defendants did not argue that the issue of "disparity in price" was precluded by collateral estoppel nor did the parties provide a basis to compare New York's definition of "disparity in price" to the Bankruptcy Code's definition of "less than a reasonably equivalent value".

In conclusion, based on the court's inability, at this stage, to find that reasonably equivalent value was obtained at the sheriff's foreclosure sale of debtors' home, summary judgment is denied.

SO ORDERED.