In re Eddie M. PRUITT a/k/a Eddie Marion Pruitt, Debtor.

Eddie M. PRUITT a/k/a Eddie Marion Pruitt and Michael J. Macco, Trustee,

v.

GRAMATAN INVESTORS CORP., Leo Kaufman, Milton Berlin and Thomas P. Phelan, Defendants.

Bankruptcy No. 186–60529–352.
Adv. No. 186–0051.

United States Bankruptcy Court, E.D. New York.

April 15, 1987.

Horwitz & Associates, New York City, for debtor.

Freeman, Hyman & Diamond, P.C., Garden City, N.Y., for Gramatan Investors Corp.

Stim & Warmuth, P.C., Huntington, N.Y., for Milton Berlin and Leo Kaufman.

Michael J. Macco, Melville, N.Y., Trustee.

## DECISION

MARVIN A. HOLLAND, Bankruptcy Judge:

The debtor in this Chapter 13 case [1] seeks to avoid a mortgage foreclosure on its real property based upon the analysis set forth in *Durrett v. Washington Nat. Ins. Co.*, 621 F.2d 201 (5th Cir.1980) and its progeny. Prior to addressing the merits of the debtor's claim, the court must determine whether a Chapter 13 trustee may exercise a trustee's avoiding power for these purposes.

## FACTS

On May 6, 1986 the parties stipulated and I make the following findings of fact:

1. The premises in question are known as 12 Dale Avenue, Hempstead, New York.

2. The premises are owned by the debtor and his wife as tenants by the entirety.

3. There is a first mortgage on the premises upon which there was due and outstanding a balance of $27,059.83 as of March 13, 1986.

4. On March 11, 1983 there were three judgments which were liens upon the premises totalling $2,799.27. The liens of these judgments were subordinate to the lien of the first mortgage and it is not clear whether they were also subordinate to the lien of the second mortgage.

5. The defendant, Gramatan Investors Corp., was the holder of a second mortgage upon the premises which came into default

---

1. The debtor filed its petition on March 17, 1986.

and upon which a foreclosure action was commenced prior to the filing of the petition herein. On January 21, 1986, a judgment was entered in the Supreme Court of the State of New York, Nassau County, in the amount of $7,356.90, plus $715.75 for fees and disbursements. Additionally, there was a referee's fee which was approximately $200 with interest on that amount from the date of the judgment. On March 11, 1986 the property was sold, pursuant to judgment of foreclosure and sale, at a public sale to the defendant, Leo Kaufman, for the sum of $22,500.00.

6. Such sale was subject to the lien of the first mortgage and two judgments.

7. On April 23, 1986, the debtor commenced an adversary proceeding seeking in part to set aside the sale of the debtor's real property as a fraudulent transfer pursuant to 11 U.S.C. §§ 522(h)(1) and 548(a)(2).

8. At the trial, which was held on May 6, 1986, the plaintiff called an appraiser who was the only expert testifying on the issue of the market value of the premises. Plaintiff's appraiser testified that the fair market value of the property was between $110,000 and $115,000; that the property at a bankruptcy sale would bring approximately $96,000 and that at a distress or forced sale the property might bring $75,000. The appraiser's testimony was credible, unimpeached and uncontradicted. I find the fair and reasonable market value of the property to be in the range of $110,000 to $115,000 as testified by plaintiff's appraiser.

## DISCUSSION

*Debtor's standing to pursue this action*

■ Unlike a debtor-in-possession,[2] a Chapter 13 debtor is not given all of the rights of a Chapter 13 trustee. Rather, 11 U.S.C. § 1303 confers upon a Chapter 13 debtor only those rights given to a trustee pursuant to 11 U.S.C. § 363(b), (d), (e), (f) and (*l*). These powers apply only to the

use and disposition of property; they do not authorize the debtor to exercise the avoiding powers of a trustee. Nevertheless, 11 U.S.C. § 522(h) confers upon the debtor the right to exercise a portion of the trustee's avoiding powers, including the power to set aside a fraudulent transfer under 11 U.S.C. § 548. Section 522(h) provides that:

The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title: and

(2) the trustee does not attempt to avoid such transfer.

In order to determine whether the debtor has met the hurdle presented by § 522(h)(2), it is necessary to determine whether the trustee, Michael J. Macco, has made any attempt to avoid this transfer.

■ The parties have offered no evidence concerning any actions taken by the trustee to avoid the foreclosure sale. The complaint does not allege, nor has the debtor attempted to prove, whether the trustee has commenced such a proceeding. Although the title of this adversary proceeding as first filed is "EDDIE M. PRUITT, a/k/a EDDIE MARION PRUITT and MICHAEL J. MACCO, TRUSTEE, plaintiffs, against GRAMATAN INVESTORS CORP., LEO KAUFMAN, MILTON BERLIN, and THOMAS P. PHELAN", the trustee never participated in this proceeding, although the debtor's counsel contends that the trustee had given him "verbal authority" to represent the trustee in this proceeding. Nevertheless, this "authority" had never been formalized. This claimed "verbal authority" in and of itself would be insufficient to authorize the debtor's attorney to represent the trustee in this matter. The authority to represent a trustee must be formalized in accordance with the pertinent

---

**2.** 11 U.S.C. § 1107(a) gives the debtor in possession, subject to certain limitations and exceptions, "all the rights ... and powers and [the ability to] form all the functions and duties ... of a trustee serving in a case under this chapter."

Bankruptcy Code, Bankruptcy Rules and Local Rule provisions. 11 U.S.C. § 327(a) enables the trustee, with court approval, to employ an attorney to represent or assist him in carrying out his duties.[3] This section is explicit in stating that the attorney who is retained by a trustee must "not hold or represent an interest adverse to the estate," and must be a "disinterested person." In addition, Local Rule 18(a)(1) of the Local Rules of the United States Bankruptcy Court for the Eastern District of New York states in pertinent part that "[n]o attorney ... shall be retained ... unless his retention has been authorized by an order of the Court."

■ The trustee has not made any written application seeking to retain the debtor's attorney to represent him in this adversary proceeding. In the absence of such an application and an accompanying order signed by a bankruptcy judge, the court cannot find that debtor's counsel is in any way acting on behalf of the trustee in this proceeding. Additionally, the court notes that even if an application for retention had been made by the trustee, the debtor's attorney could not meet the requirements of 11 U.S.C. § 327(a) that he be a disinterested person.

■ At the trial, neither party offered any proof directed towards determining whether the trustee had independently commenced a proceeding seeking to set aside the fraudulent sale under § 548(a)(2). However, this court takes judicial notice of the contents of its files with regard to both this adversary proceeding[4] and the case in which the adversary proceeding arose. *E.g. IIT v. Lam (In re Colorado Corp.)*, 531 F.2d 463, 467 (10th Cir.1976); *Duhart v. Carlson*, 469 F.2d 471, 473 (10th Cir. 1972), and accordingly finds that the trustee has not made any attempt to avoid the transfer which is the subject of this proceeding.

■ The debtor has claimed his interest in the property as exempt under New York state law and no timely objections have been sustained. Therefore, the debtor has met the additional hurdle set forth in § 522(h). *See, Joing v. O & P Partnership*, 61 B.R. 980, 982–83 (Bkrtcy.D.Minn. 1986). Based on the foregoing analysis, this court finds that the debtor has standing to pursue this matter pursuant to 11 U.S.C. § 522(h)(2). *See id.*

### Durrett and its Circuit Court Progeny

In seeking to avoid a foreclosure of a Chapter 13 debtor's real property, the plaintiff argues that the foregoing sale is a fraudulent transfer that can be set aside pursuant to 11 U.S.C. § 548(a)(2).[5] The Courts of Appeals for the Fifth, Ninth, Eighth and Sixth Circuits have considered the issue of whether a non-judicial foreclosure sale should be set aside as a fraudulent transfer pursuant to § 548(a)(2).

In the landmark case of *Durrett v. Washington Nat. Insur.*, 621 F.2d 201 (5th

---

3. This section also gives the trustee the authority to employ accountants, appraisers and auctioneers, or other professional persons.

4. Rule 201(c) of the Federal Rules of Evidence provides that the court may take judicial notice whether requested or not. Subdivision (f) of that Rule provides that judicial notice may be taken at any stage of the proceeding.

5. 11 U.S.C. § 548(a)(2) enables:

> [t]he trustee [to] avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor that was made or incurred on or within one year before the date of the filing of the petition, if the debtor ...
>> received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
> intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

Since the foreclosure sale occurred six days before the petition was filed, the debtor was indeed insolvent on the date of this "transfer"; thus meeting the requirement set forth in § 548(a)(2)(B)(i).

Cir.1980), the Fifth Circuit was called upon to consider whether a transfer of property pursuant to a deed of trust is voidable under § 67(d) of the Former Bankruptcy Act. The district court in *Durrett* had earlier held that the non-judicial sale constituted a transfer within the purview of Section 67(d). *Durrett v. Washington Nat. Insur. Co.*, 460 F.Supp. 52, 54 (N.D.Tex. 1978). However, the district court found that the sale should not be set aside since it viewed the sale price of $115,400 as fair consideration and a fair equivalent. *Id.*

On appeal, the debtor argued that the payment of $115,400 for an asset worth $200,000 [6] was not a "fair equivalent". The Circuit Court found that where a parcel of real estate was sold at a foreclosure sale for a price approximately 57.5% of the property's fair market value, this was not a "fair equivalent" for the transfer of the property. *Durrett*, 621 F.2d at 203. The court observed that:

[it has] been unable to locate a decision of any district or appellate court dealing only with a transfer of real property as the subject of attack under section 67(d) of the Act, which has approved the transfer for less than 70 percent of the market value of the property. *Id.*

The court also noted that a "transfer of title to the real property ... by a trustee on foreclosure of a deed of trust to a purchaser at the sale constitutes a 'transfer' ... within the purview of section 67(d)." *Id.* at 204. Most importantly, the court found that *the transfer was not final until the date of the foreclosure sale* and therefore fell within the one-year period set forth in Section 67(d). *Id.*

The Bankruptcy Appellate Panel for the Ninth Circuit also had to determine whether a non-judicial foreclosure of a deed of trust could be satisfied as a fraudulent conveyance under § 548 if the purchase price was significantly lower than the fair market value of the property. *Lawyers Title Ins. Corp. v. Madrid (In re Madrid)*, 21 B.R. 424 (9th Cir. BAP 1982). The panel refused to adopt the *Durrett* 70% rule since it viewed a "regularly conducted sale, open to all bidders and all creditors [as] a safeguard against the evils of private transfers to relatives and favorites." *Id.* at 426–27. The court conclusively presumed that the price bid at a regularly conducted, non-collusive foreclosure sale is the fair equivalent value of the property sold. *See id.*

The Ninth Circuit Court of Appeals affirmed the result reached by the Appellate Panel's decision, but failed to address the issue of what constitutes reasonably equivalent value. The Circuit Court focused instead on the question of when the transfer of the debtor's property occurred. The court held that

[t]he foreclosure sale was not a transfer under § 548(a) [rather] the transfer of Madrid's property interest under § 548(a)(2)(A) occurred at the time the second deed of trust was perfected under Nevada law. [Since] [t]hat transfer was carried out more than one year prior to filing of the bankruptcy petition ... the transfer was not voidable as a § 548(a)(2)(A) fraudulent conveyance. *Madrid v. Lawyers Title Ins. Corp. (In re Madrid)*, 725 F.2d 1197, 1199 (9th Cir.1984).

Shortly after it issued its decision in *Durrett*, the Court of Appeals for the Fifth Circuit again had to determine whether a non-judicial foreclosure sale constituted a "transfer" within the meaning of Section 67(d) of the Bankruptcy Act. In *Abramson v. Lakewood Bank & Trust Co.*, 647 F.2d 547 (5th Cir.1981), the court found that the foreclosure sale was a "transfer" within the meaning of the Act which occurred within a year of the filing of the bankruptcy petition, and consequently remanded the case for a hearing on the issue of fair consideration. *Id.* at 549.

The Court of Appeals for the Eighth Circuit was also faced with a *Durrett*-type case and followed *Durrett* in holding that the foreclosure of a mortgage pursuant to North Dakota law constituted a transfer of the debtor's interest in property. *First*

---

**6.** In its findings of fact, the district court found that the fair market value of the property as of January 4, 1977, the date of the foreclosure sale, was $200,000.00.

*Fed. Sav. & Loan Assoc. of Bismarck v. Hulm (In Re Hulm),* 738 F.2d 323, 325 (9th Cir.1984). The Eighth Circuit viewed the language of § 101(41) as a clear indication that Congress intended a mortgage foreclosure to be a "transfer" for purposes of § 548(a). *Id.* at 326. The court went on to observe that under applicable state law the debtor had an interest in the mortgaged property until at least the expiration of the redemption period. *Id.*

> We have no difficulty in concluding that under North Dakota law Hulm had an interest in the property at the time of its sale, and at least until expiration of the redemption period. The mortgage held by First Federal was only a defeasible conveyance giving it the right to satisfy Hulm's unpaid debt from the property. *See Pioneer Credit Co. v. Latendresse,* 286 N.W.2d 445, 447 (N.D.1979). As a mortgagee, First Federal did not have a title interest in the property. *Aure v. Mackoff,* 93 N.W.2d 807, 811 (N.D.1958). Hulm remained the legal owner of the property until foreclosure, and his interest was alienable. *Knowlton v. Coye,* 76 N.D. 478, 37 N.W.2d 343, 347 (1949). Hulm's interest also included the right to possession of the property until the end of the redemption period, *see* N.D.Cent. Code, § 28–24–11, and the right to the excess of the value of the property over First Federal's mortgage, *see* N.D.Cent. Code, § 32–19–10. At the foreclosure sale Hulm's interest was transferred subject to redemption. Hulm's equity of redemption was likewise an interest in the mortgaged property which could be conveyed. *See Robar v. Ellingson,* 301 N.W.2d 653, 657 (N.D.1981). Issuance of the sheriff's deed terminated Hulm's interest in the property. *See* N.D.Cent. Code, § 32–19–09. *In re Hulm,* 738 F.2d at 326.

The *Hulm* court also remarked that notwithstanding the views expressed by the Ninth Circuit Bankruptcy Appellate Panel in *Madrid* the sale price arrived at during a regularly conducted foreclosure sale, even where there is no showing of fraud or collusion, cannot automatically be deemed to provide a reasonably equivalent value in exchange for the interest transferred within in the meaning of § 548(a). *In re Hulm,* 738 F.2d at 327. The Circuit Court then remanded the case back to the Bankruptcy Court for an evidentiary hearing and determination as to whether the foreclosure sale price provided a reasonably equivalent value in exchange for the debtor's property interest. *Id.*

The Court of Appeals for the Sixth Circuit in *In re Winshall Settlor's Trust,* 758 F.2d 1136 (6th Cir.1985) followed the rationale expressed by the Appellate Panel in *In re Madrid,* 21 B.R. 424 (9th Cir. BAP 1982) in refusing to set aside a foreclosure sale under § 548(a)(2). Without directly deciding whether a foreclosure sale is a transfer subject to § 548, the Circuit Court remarked that "[t]he better view is that reasonable equivalence for the purposes of a foreclosure sale under § 548(a)(2)(A) should be consonant with the state law of fraudulent conveyances." *In re Winshall Settlor's Trust,* 758 F.2d at 1139.

*BAFJA and DURRETT action*

■ The Bankruptcy Amendments and Federal Judgeship Act of 1984 did not alter the result reached in the *Durrett* line of cases. Section 548(a) was amended to allow the trustee to avoid any transfer of an interest of a debtor regardless of whether the debtor transferred the interest *voluntarily* or *involuntarily.* The definition of "transfer" contained in § 101(48) was also amended to encompass a "foreclosure of the debtor's equity of redemption", even though that subsection had always included within its definition "every mode ... *voluntary or involuntary* ... disposing of or parting with property or with an interest in property ..." [Emphasis supplied]. These Amendments clearly indicate that Congress intended to allow a trustee to avoid a foreclosure sale that meets the test of § 548(a)(2).

Having acknowledged the validity of the *Durrett* cause of action, it becomes necessary to consider:

1. Whether or not the "transfer" for which the avoidance is sought occurred

when the mortgage obligation was created or when the foreclosure sale was held, and

2. Whether or not the transfer was for a reasonably equivalent value.

*The Time of Transfer*

Several reported decisions have held that for purposes of § 548 a transfer is made not at the time of foreclosure, but at the time that the mortgage deed is created.

The Bankruptcy Court in *Frank v. Berlin (In re Frank)*, 39 B.R. 166 (Bkrtcy.E. D.N.Y.1984) discussed the point in time when a "transfer" for purposes of § 548(a)(2) occurs. *In re Frank* involved an adversary proceeding brought on by a debtor-in-possession to set aside the sheriff's sale of her share in a one-family residence. *Id.* at 167. The court had to determine whether the time of the transfer for § 548 purposes related back to the time when the bank docketed its judgment or whether the transfer took place at the time of the sale and delivery of the deed. The court distinguished the matter before it from *Durrett* and its progeny since "those cases dealt with non-judicial foreclosure sales based upon prior execution of trust deeds while this matter concerns a sheriff's sale based upon a judgment lien." *In re Frank*, 39 B.R. at 172. The court concluded that:

[s]ince section 548(d)(1) of the Code defines the time of transfer as the time a transferee is perfected against subsequent buyers, and because a transferee who takes real property at a sheriff's sale is perfected under New York law only once he has recorded his deed, the transfer ... must be deemed to have taken place on March 7, 1983 [the date the deed was recorded] which was less than two months before the debtor filed her petition. *Id.*

The district court in *Alsop v. State of Alaska Comm'r. of Revenue for the Pub. Employees Retirement Fund (In re Alsop)*, 22 B.R. 1017 (D.Ala.1982) held that a non-judicial foreclosure of a deed of trust did not constitute a transfer within the meaning of 11 U.S.C. § 101. *Id.* at 1018. The court looked to a provision of state law which stated that "[a] deed of trust becomes perfected against subsequent bona fide purchasers when it is recorded"; and consequently found that since the deed of trust was recorded on November 8, 1978, some 21 months before the petition was filed, the transfer occurred earlier than one year prior to the filing of the bankruptcy petition. *Id.*

Notwithstanding those cases to the contrary, the prevailing view expressed by courts which have recently considered this issue is that for purpose of § 548(a)(2) the transfer occurs at the time the foreclosure sale is held. *E.g.*, *Hoffman v. Heritage Savings & Loan Assn. (In re Garrison)*, 48 B.R. 837, 839 (D.Colo.1985); *Bundles v. Baker (In re Bundles)*, 61 B.R. 929, 934 (Bkrtcy.S.D.Ind.1986); *Joing v. O & P Partnership*, 61 B.R. 980, 983 (Bkrtcy.D. Minn.1986); *In re Ristich*, 57 B.R. 568, 575–76 (Bkrtcy.N.D.Ill.1986); *Fargo Biltmore Motor Hotel Corp. v. Metropolitan Federal Bank, (In re Fargo Biltmore Motor Hotel Corp.)*, 49 B.R. 782, 787–88 (Bkrtcy.D.N.D.1985); *In re Upham*, 48 B.R. 695, 697 (Bkrtcy.W.D.N.Y.1985); *J.I. Case Credit Corp. v. Kangas (In re Kangas)*, 46 B.R. 102, 105 (Bkrtcy.D.Minn. 1985).

Any discussion of *the* "time of the Transfer" issue loses sight of the fact that the creation of a mortgage and the foreclosure of a mortgage each constitute a separate and distinct transfer.

"Property" means the sum total of all of the legally recognized rights and interests in and to the physical object; such as the rights of possession, use and disposition as distinguished from the physical object itself. *Cereghino v. State*, 230 Or. 439, 370 P.2d 694, 697 (1962). *See also*, the general approach to the concept of "property" embodied in 11 U.S.C. § 541 and in *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

At the time of the creation of a mortgage, certain of the debtor's rights are transferred to the mortgagee, while others are retained. The transferred rights are security interests which generally do not ripen into possessary interests until a default occurs. Retained rights generally in-

clude the rights of enjoyment and the right to redeem the property from the lien of the security transaction upon payment of the obligation secured thereby. Cohn, *Foreclosures as Fraudulent Transfers: Solving the Durrett Problem*, 103 Banking L.J. 259, 264 (1986) (citing G. Osborne, G. Nelson & D. Whitman, *Real Estate Finance Law*, § 5.1 (1979)).

A foreclosure terminates the mortgagor's rights and transfers to the purchaser all of the property rights in the premises. Indeed, the primary purpose of a foreclosure proceeding is to extinguish the debtor's equity of redemption, the primary right retained by the debtor.

Since those rights transferred at the time of creation of the security consist only of the ability to enforce the obligation secured thereby, it is evident that the consideration for such transfer is both contemporaneous and equivalent:—the creation of an obligation and the creation of the right to enforce such obligation against specific property.

 A foreclosure, however, constitutes a transfer out of the debtor of all of the remaining property rights and interests not previously conveyed. Moreover, this additional transfer takes place without further consideration, other than possible costs and expenses incidental to the foreclosure. Therefore, unless the aggregate value of both of the debtor's transfers, the transfer by the debtor at the time of the creation of the security interest as well as the transfer from the debtor at the time of its foreclosure, meet the tests of § 548 with regard to consideration, the second transfer (that is, the one which took place at the time of the foreclosure) is subject to the avoiding powers granted by that section.

Since this transfer occurred six days prior to the date the Chapter 13 petition was filed, the first requirement for setting aside a fraudulent transfer under Section 548(a)(2) has also been met.

*Reasonably Equivalent Value*

 Subsequent to the issuance of the *Durrett* decision, three distinct methods of analysis have been utilized by courts when considering the question of whether the holding of a foreclosure sale resulted in property being sold for less than reasonably equivalent value. One line of cases follow the *Durrett* rule which states that no conveyance can be deemed fraudulent unless the consideration received by the debtor was less than 70% of the market value of the property. Another line of cases follow the Bankruptcy Appellate's Panel decision in *In re Madrid*, which hold that absent collusion, consideration received at a foreclosure sale should be conclusively presumed to be reasonably equivalent in value. A third line of cases have departed from the strict 70 percentage rule of *Durrett* and the *Madrid* conclusive presumption and instead adopted a case-by-case approach to determine whether a foreclosure sale brought reasonably equivalent value to the debtor.

Those courts which adopt the *Durrett* 70% rule hold that a non-judicial foreclosure sale which brings a price that is less than 70% of the market value of the property foreclosed does not constitute reasonably equivalent value in exchange for such transfer. *See, e.g., Willis v. Borg-Warner Acceptance Corp. (In re Willis)*, 48 B.R. 295, 300–01 (S.D.Tex.1985); *Federal National Mortgage Assoc. v. Wheeler (In re Wheeler)*, 34 B.R. 818, 820–21 (Bkrtcy.N.D.Ala.1983).

Those courts which follow the Bankruptcy Appellate Panel in *In re Madrid* believe that "[g]iven a regularly conducted, non-collusive foreclosure sale ... [a] Court shall conclusively presume that the sale price constitutes 'reasonably equivalent value' under 11 U.S.C. Section 548(a)(2)(A)." *Bundles v. Baker (In re Bundles)*, 61 B.R. 929 (Bkrtcy.S.D.Ind. 1986). The bankruptcy court for the Western District of New York adopted the *Madrid* conclusive presumption rule remarking that

[t]he foreclosure proceeding, if properly conducted, placed anyone interested in buying real estate on notice that a sale would be held. Anyone who is in the market to buy real property at that point in time had the opportunity to bid at the

foreclosure sale. Anyone who thought the property was worth more than the highest bid could have stepped in and bid even higher.... The highest bid received in a properly conducted foreclosure action, where there has been no complaint of foul play or improper process, is the reasonably equivalent value of that property. *In Re Upham*, 48 B.R. 695, 697 (Bkrtcy.W.D.N.Y.1985).

*See* also *Verna v. Dorman (In re Verna)*, 58 B.R. 246, 251–52 (Bkrtcy.C.D.Cal. 1986) (holding that in the absence of any procedural defects in the foreclosure sale, such sale is not avoidable as a fraudulent transfer); and *In re Ristich*, 57 B.R. 568, 577–78 (Bkrtcy.N.D.Ill.1986) (holding that a foreclosure sale to a third-party purchaser yields reasonably equivalent value absent a showing of actual fraud or collusion recognized under state law).

As an alternative approach to the strict application of the *Durrett* 70% rule and the *Madrid* conclusive presumption of reasonably equivalent value, several recently reported decisions have followed the Circuit Court's approach in *First Fed. Sav. & Loan Assoc. of Bismarck v. Hulm (In re Hulm)*, 738 F.2d 323 (8th Cir.1984) and recommend that the question of reasonably equivalent value be determined on a case-by-case basis.

Reasonably equivalence must depend on the facts of each case. Relevant considerations include the fair market value of the property at the time of the sale, the nature of the property in question and its relative marketability, and the number of persons appearing and bidding at the foreclosure sale.

Most courts have placed the greatest weight on the disparity between the sale price and the fair market value of the property. Absent unusual circumstances, this will typically be the controlling consideration. *Hoffman v. Heritage Savings & Loan Assn. (In re Garrison)*, 48 B.R. 837 (D.Colo.1985).

In a recent decision, after describing the problems associated with the *Durrett* 70% rule and the *Madrid* conclusive presumption, Bankruptcy Judge Robert John Hall recommended adopting a case-by-case approach when considering the value question. *Adwar v. Capgro Leasing Corp., (In re Adwar)*, 55 B.R. 111, 113–15. In *Adwar*, the Chapter 13 debtor brought an adversary proceeding seeking to set aside a judicial foreclosure sale conducted by the sheriff. *Id.* at 113. The debtor argued that due to collusion the defendants purchased the real property for only .05% of its value. *Id.* In rejecting the applicability of the *Durrett* 70% rule, Judge Hall astutely observed that "a mere percentage test for measuring value does not take mitigating circumstance into account such as the nature of the market." *Id.* Resorting to a strict 70% guideline as a measure of what is reasonably equivalent value ignores the fact that in some cities with a strong foreclosure market a sale of property for 75% of fair market value would not be reasonably equivalent value. Whereas, in other cities where the foreclosure market is very weak, a foreclosure sale for a price which is 60% of fair market value could be viewed as reasonably equivalent value. *See Id.*

Judge Hall also criticized the presumption of reasonably equivalent value utilized by the Bankruptcy Appellate Panel for the Ninth Circuit in *Lawyers Title Ins. Corp. v. Madrid (In re Madrid)*, 21 B.R. 424 (9th Cir. BAP 1982) as being unduly restrictive. "By presuming the fairness of all state foreclosure procedures, the Ninth Circuit limits litigants to arguments about the conduct of foreclosure sales under state law." *Adwar*, 55 B.R. at 114.

*See e.g. Ruebeck v. Attleboro Savings Bank (In re Ruebeck)*, 55 B.R. 163, 167–68 (Bkrtcy.D.Mass.1985); *Lower Downtown Associates v. Brazosbanc Sav. Ass'n of Texas*, 52 B.R. 662, 666 (Bkrtcy.D.Colo. 1985); *Fargo Biltmore Motor Hotel Corp. v. Metropolitan Fed. Bank*, 49 B.R. 782, 788–89 (Bkrtcy.D.N.Dak.1985) (all holding that a determination as to whether a foreclosure sale resulted in property being sold for a reasonably equivalent value should be done on a case-by-case basis).

This court is convinced that the case-by-case approach is the appropriate way of ascertaining whether a foreclosure sale

price is the reasonably equivalent of the value of the property for purposes of Section 548(a)(2). We therefore turn to a consideration of whether the foreclosure price was a reasonably equivalent value in relation to the fair market value of the property sold in this adversary proceeding.

█ In order to show that the foreclosure sale price did not result in the property being sold for a reasonably equivalent value, the attorneys for the defendants, Gramatan Investors, in their brief argue that the computation should go as follows: Add $22,500 as the amount of the second mortgage balance to $27,000 as the first mortgage balance and $3,600 in liens equal $53,100 paid by the purchasers. This they compute to be 70.8% of the $75,000 testified by the appraiser as the price that might be expected to be realized upon a forced sale.

This analysis, however, ignores two facts. First, there is neither allegations nor evidence that the purchaser paid the $27,000 first mortgage balance or the $3,600 in liens to which the premises were subject. The purchaser took subject to those amounts; something far different from payment. Second, the appraiser testified that the fair market value of the premises was between $110,000 and $115,000. The appraiser testified that $75,000 was the amount that one might be expected to receive at a forced and admittedly distressed sale. The court notes that the sale which is the subject of this proceeding did not even approximate the distressed sale price. Deducting $27,000 as the lien of the first mortgage and $3,600 as the lien of the judgments and taxes from $110,000 (the lower of the range of fair market values testified to by the appraiser), we have a debtor's equity subject only to the lien of the mortgage whose foreclosure resulted in the sale which is the subject of this proceeding, of $79,400. The amount bid at the foreclosure sale, $22,500, is exactly 28.34% of this amount; hardly a reasonably equivalent value.

*The Limitation Upon Debtor's Avoiding Powers*

█ Even though the memorandum of law of the defendant, Gramatan, contains the following provisions "further, defendant/secured creditor, Gramatan, concedes that the debtor is a proper party to bring the instant action ..." the debtor can only avoid the transfer to the extent that the debtor could have exempted the transfer had the trustee avoided it. Since the amount of the real property interest subject to the transfer which could have been exempted by the debtor is only the sum of $10,000, the court is troubled by the effect of a transfer the avoidance of which the debtor is clearly entitled to, but not to the extent of the full value of the amount which the debtor seeks to have transfered. The debtor has a right to avoid the transfer to the extent of $10,000. However, the purchaser also has a right not to have the transfer avoided to the extent that it exceeds $10,000.

These rights of the debtor and the purchaser are for practical purposes mutually exclusive. To resolve this conflict the court has no choice but to render a decision based purely upon policy since there is neither applicable statutory authority nor common law doctrine. Should the court: 1) deny the debtor's application in order to preserve for the secured creditor a windfall far in excess of that for which it bargained or for which it is in any way entitled, or 2) deny the debtor the right to claim his exemption upon which is predicated the statutory right of redemption and an opportunity for his "fresh start". To state the question is to suggest its resolution. The rights of the defendants to preserve their windfall must be subordinate to the fundamental right of the debtor. Any other result would do violence to the overriding policy goal of providing the debtor with every opportunity to achieve a "fresh start".

It is therefore ORDERED and ADJUDGED that the sale held on March 11, 1986 pursuant to judgment of foreclosure and sale dated January 21, 1986 is hereby avoided; title to the premises affected thereby is hereby revested in the debtor free of any claims by the purchaser at that sale. Such purchaser is granted leave to settle a judgment against the foreclosing

mortgagee for the amount paid at the sale within twenty (20) days hereof unless prior thereto such sum is voluntarily repaid. All of the foregoing is without prejudice to the foreclosing mortgagee to move to vacate the Section 362 stay so as to permit the readvertising and resale of the mortgaged premises unless the debtor obtains confirmation of a plan which purports to cure all arrears upon the subject mortgage within ninety (90) days or such other time as the court may fix on notice.