In re HENRY–LUQUEER PROPERTIES, INC.,
Debtor.

HENRY–LUQUEER PROPERTIES, INC., Plaintiff,

v.

Michael MAYO, Jr., Defendant.

Bankruptcy No. 890–83703–478.
Adv. No. 890–8323–478.

United States Bankruptcy Court,
E.D. New York.

Sept. 30, 1992.

Backenroth and Grossman by Abraham Backenroth, New York City, for debtor.

Sawyer, Davis, Halpern & Rosenstock by Kenneth Halpern, Garden City, N.Y., for defendant.

MEMORANDUM DECISION PURSUANT TO REQUEST TO SET ASIDE A FORECLOSURE SALE PURSUANT TO SECTION 548(a)(2)(A) OF THE BANKRUPTCY CODE

DOROTHY EISENBERG, Bankruptcy Judge.

The Plaintiff/Debtor having commenced an adversary proceeding to set aside a transfer of real property as a fraudulent conveyance pursuant to Section 548(a)(2)(A) of the Bankruptcy Code, and this Court having conducted a trial on the merits, and having examined and considered the evidence offered by the respective parties, the testimony of witnesses, and the case having been submitted to the Court for decision, the Court finds for the Defendant and holds that the transfers made pursuant to the State Court judgment of foreclosure as conducted in this case was not a fraudulent conveyance under Section 548(a)(2)(A) of the Bankruptcy Code.

## II. FACTS AND BACKGROUND

The relevant facts of the instant matter are not in dispute. The Debtor is in the business of real estate investments. Henry–Luqueer Properties, Inc., the Debtor and Plaintiff herein ("Plaintiff" or "Debtor"), had previously acquired title to two multiple unit residential dwellings ("Properties") in Brooklyn; one located at Henry Street ("Henry Street Property"), the other located at Luqueer Street ("Luqueer Street Property"). Both of the Properties were purchased by the Plaintiff subject to mortgages granted by the previous owner to Michael Mayo, Jr. ("Defendant").

Both properties were and are in deplorable condition. The Debtor was in the process of improving and repairing each apartment and the property in general, which required extensive renovation. In the interim, the apartments that were inhabitable were rented to tenants at market value, considering the condition of the properties. This property was not prime real estate.

The Debtor's schedules indicate that aside from unsecured loans to the Debtor

from individual investors or other lenders, there were only two utility creditors which are owed a minimal amount of the scheduled debt. The Debtor had no assets, other than security deposits from tenants. The Debtor's Statement of Affairs indicates that the only payments for any mortgage debt was made to a second mortgagee in a total sum of Five Thousand, Five Hundred dollars ($5,500.00) for the entire year of 1990. There were no payments made to the first mortgagee, the Defendant herein.

On or about November 30, 1989, based upon the Plaintiff's default in mortgage payments, the Defendant commenced state court foreclosure actions. On May 3, 1990, a default judgment was entered in the amount of Eighty–Nine Thousand, One Hundred and Eight dollars ($89,108.00) regarding the Henry Street Property. Three months later, on August 2, 1990, a default judgment was entered in the amount of Ninety Thousand, Four Hundred and Four dollars ($90,404.00) regarding the Luqueer Street Property.

Pursuant to the judgment of foreclosure, the properties were ordered to be sold at public auction. Among other procedures mandated by New York State law, the State Court ordered that the sale be advertised in the Brooklyn Bulletin for four (4) consecutive weeks prior to sale. This procedure was complied with by the Defendant. After public notice as directed by the State Court, the Properties were sold at public auctions. On June 20, 1990, the Defendant outbid one other bidder and purchased the Henry Street Property for One Hundred and Six Thousand dollars ($106,-000). On September 25, 1990, the Luqueer Street Property was also sold to the Defendant, who was the sole bidder at that auction, for Ninety–Two Thousand, Five hundred and Three dollars ($92,503.00). There is no dispute that the Properties were sold in accordance with New York State law, pursuant to judgments of foreclosure.

Debtor claimed it had not been properly served with process in the foreclosure action and attempted to vacate the default judgment obtained by the Defendant in the State Court. The State Court upheld the service of process and denied reargument on the issue. The Debtor did not appeal that decision. After the Debtor's failed attempt to vacate the foreclosure judgment and rescind the State foreclosure sale, the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on December 6, 1990 and commenced this adversary proceeding claiming that the judicial foreclosure sale duly conducted pursuant to New York State law should be set aside as a fraudulent conveyance under Section 548(a)(2)(A) of the Bankruptcy Code claiming that the transfer of the Properties to the Defendant were for less than a reasonably equivalent value.

The argument of the parties in the instant action involves the prices obtained for the Properties. There is no dispute that the properties were sold at prices substantially below the appraised values submitted by either the Debtor or the Defendant at the Court's hearing. Although no appraisals were performed prior to the sales, both parties have submitted appraisals performed subsequent to the sales which attempt to establish dollar values for the Properties as of the date of the sales. Based upon the post-sale appraisals submitted by the Debtor, the Debtor claims that the Henry Street Property sold for fifty-three (53%) percent of its fair market value while the Luqueer Street Property sold for thirty-nine (39%) percent of its fair market value. Based upon the post-sale appraisals submitted by the Defendant, the Defendant counters that the Henry Street Property sold for seventy-six (76%) percent of its fair market value while the Luqueer Street Property sold for sixty-two (62%) percent of its fair market value. The Debtor argues that based on the appraisals, the Properties were sold for less than reasonably equivalent value pursuant to Bankruptcy Code section 548. However, neither party presented any testimony or evidence as to the market value of the Properties in terms of forced or distressed sales as were conducted in this case.

The sales or transfers clearly took place within one (1) year of the filing of the Debtor's petition and the parties have stipulated that the Debtor was insolvent or

was rendered insolvent as a result of the foreclosure sale.

The Plaintiff argues that the mere fact that the Properties were sold for dollar amounts substantially below the post-sale appraisals submitted by either party is sufficient and clear proof that the transfers of the Properties to the Defendant were made for less than a reasonably equivalent value and should be avoided. The Defendant contends that the foreclosure sales were made in strict compliance with New York State law and that the sales were conducted in a commercially reasonable manner.

The only issue that remains before this Court is whether or not the Debtor "received less than a reasonably equivalent value" and thus, whether the facts in this case support a finding that the judicially ordered foreclosure sale resulted in a fraudulent conveyance pursuant to Bankruptcy Code Section 548(a)(2)(A).

### III. *Discussion*

Pursuant to section 323(a) and (b) of the Code, a trustee is empowered to commence an adversary proceeding on behalf of the estate. 11 U.S.C. 323(a)-(b). The Plaintiff herein has the authority to bring this action pursuant to Code section 1107(a) which gives a debtor in possession, subject to certain limitations and exceptions, all the rights and powers of a trustee serving in a case under Chapter 11 of the Code. 11 U.S.C. 1107(a).

Section 548 of the Code provides the conditions under which certain transfers may be avoided as fraudulent. Specifically, section 548 provides that:

"(a) The trustee may avoid any transfer of an interest of the debtor in property ... that was made ... on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

\*　　\*　　\*　　\*　　\*　　\*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer ...; and

(B)(i) was insolvent on the date that such transfer was made ... or became

insolvent as a result of such transfer...."

11 U.S.C. 548.

■ Due to the 1984 amendments to the Code, which added the word "involuntarily" to subsection (a) of section 548, 11 U.S.C. 548(a), and which added "foreclosure of the debtor's equity of redemption" to the definition of "transfer", 11 U.S.C. 101 [ (58) ], a judicially ordered foreclosure sale is not immune from avoidance if it is otherwise found to be a fraudulent conveyance. ·The clear language of Code section 548 allows avoidance of sales for reasons not contemplated by many states' laws. *In re Adwar,* 55 B.R. 111 (Bankr. E.D.N.Y.1985).

■ The various courts which have considered this issue have disagreed as to the proper standard to be applied. On one end of the spectrum is the standard employed in *Durrett v. Washington Nat'l Insurance Co.,* 621 F.2d 201 (5th Cir.1980)(A transfer for less than 70% of appraised fair market value is not a transfer for reasonably equivalent value.), while on the other end of the spectrum is *Madrid v. Lawyers Title Ins. Corp. (In re Madrid),* 21 B.R. 424 (Bankr.App. Panel 9th Cir.1982), *aff'd on other grounds,* 725 F.2d 1197 (9th Cir. 1984), *cert. denied,* 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984) (The price obtained at a non-collusive regularly conducted foreclosure sale irrefutably establishes reasonably equivalent value.).

The courts in this district have consistently rejected the rigid standards set forth in either *Durrett,* or *Madrid* and have preferred a more flexible case by case approach. *See In re Adwar,* 55 B.R. 111 (Bankr.E.D.N.Y.1985). A mere percentage test for measuring value, as used in *Durrett* does not take mitigating circumstances into account such as the nature of the market at the time of sale. *Id.* In *Adwar,* Judge Hall determined that the foreclosure market determines the standard for reasonably equivalent value of a foreclosure sale; not a mechanical seventy (70%) percent extrapolation from an appraiser's approximation of fair market value. *Id.* Similarly, if one presumes the fairness of all state fore-

closures procedures, this presumption would limit litigants to arguments regarding compliance with state foreclosure sale procedures. *Id.* at 113; *see also, In re Pruitt,* 72 B.R. 436 (Bankr.E.D.N.Y.1987). Reasonable equivalence should not be controlled by state law. Rather, reasonable equivalence should be determined in light of the function of Section 548 in fostering an equitable distribution of the debtor's property. *In re Richardson,* 23 B.R. 434, 447 (Bankr.D.Utah 1982). Therefore, all relevant facts in a case should be considered.

Outside this district, other courts have also criticized the rigid and diametrically opposed standards of *Durrett* and *Madrid. See, e.g., Bundles v. Baker (In re Bundles),* 856 F.2d 815 (7th Cir.1988)(There should be a rebuttable presumption that the foreclosure price constitutes reasonably equivalent value but a court should also view the totality of the circumstance.); *see, also, Hulm v. First Federal S & L Assn. (In re Hulm),* 738 F.2d 323 (8th Cir.1984) *cert. denied* 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984).

More recent decisions expressed concerns over the lack of a workable standard for trial courts to apply. "Value is an elusive concept.... experts can differ greatly in their opinion of value. For this reason alone, courts should be loath to rule on the validity of a foreclosure sale based solely upon whether or not the sale achieves a given percentage of value." *General Industries v. Shea (In re General Industries),* 79 B.R. 124, 130 (Bankr. D.Mass.1987). In *General Industries* Judge Queenan noted that the elusiveness of value is particularly acute in the context of a foreclosure sale and suggested using the more practicable standard of "commercial reasonableness" drawing analogy to the Uniform Commercial Code which "places emphasis upon the sales efforts made rather than the result achieved." *Id.*

Judge Malugen of the Southern District of California formalized the approach suggested by Judge Queenan and created a three pronged standard in *Lindsay v. Beneficial Reinsurance Co.,* 98 B.R. 983

(Bankr.S.D.Cal.1989). The *Lindsay* standard initially focuses on the "commercial reasonableness" of the sale rather than the price obtained. *Id.*

The standard suggested in *Lindsay* is as follows:

> "First, the court should determine whether the foreclosure sale was properly conducted in accordance with state law and was non-collusive.
>
> Second, the court should examine the totality of the circumstances surrounding the sale to determine whether commercially reasonable steps were taken to achieve the best price at the foreclosure. If the court is satisfied with the answer to the second inquiry, no further examination of the sale need be made."

98 B.R. at 991.

Using the *Lindsay* standard, a court would look to evidence of the effect of the failure to act in a commercially reasonable manner on the price achieved only "if the Court finds that the foreclosing creditor failed to take commercially reasonable steps to achieve the best forced sale price." *Id.*

This Court endorses the standard set forth in *Lindsay.* This Court also agrees that in using the *Lindsay* test, the Court is neither "elevating compliance with state court foreclosure standards above all other factors" nor is the Court looking "solely to percentage of fair market achieved." *Id.* Thus, the test provides a trial court with a practicable standard for decision while avoiding the problems associated with, and the concerns regarding, both the *Durrett* and *Madrid* standards.

█ Applying the first prong of the *Lindsay* test to the facts of this case the Court finds that the foreclosure sales regarding both the Henry Street Property and the Luqueer Street Property were properly conducted in accordance with state law. This has not been disputed. Nor has the Plaintiff presented evidence that the sales were in any manner collusive. Therefore, this Court finds no reason to avoid the sales under the first prong of the *Lindsay* test.

Employing the second prong of the *Lindsay* test, the Court has reviewed the totali-

ty of the circumstances surrounding the sale and has determined that commercially reasonable steps were taken to achieve the best prices at the foreclosure sales.

The Defendant advertised the sales in the Brooklyn Bulletin for four consecutive weeks prior to each sale. The Court has heard uncontradicted testimony that the circulation of the Brooklyn Bulletin is approximately five thousand readers and that the actual number of potential bidders reached by this publication well exceeds five thousand if clipping and subscription services, which are directed at professionals in the foreclosure market, are taken into consideration. The testimony further supported the fact that these publications are directed to parties interested in buying real property at foreclosure sales. The Defendant presented credible testimony at trial that based upon the nature of the Properties, which have a more limited appeal, being multiple unit rather than single family dwellings, and the unfavorable, extremely depressed, market conditions during the period of the sales, additional publication or re-publication in a paper of more general circulation would have been unlikely to have increased the number of bidders at the sales and thus, would have had a negligible effect on the prices achieved for the Properties. It is more likely that such re-publication would have served only to have attracted to the auction unsophisticated "observers" who would have been in no position to bid on either of the Properties due to the payment terms required by the state foreclosure auction procedure which include a ten (10%) percent down payment with the balance due within thirty (30) days. The Debtor failed to produce any evidence that there were willing buyers for this property outside the foreclosure market, or that the Defendant did not act in a commercially reasonable manner. The Debtor merely relies on what it believes to be unreasonably low sales prices.

The burden of proof is on the Plaintiff to show that the consideration paid at the regularly conducted foreclosure sale is inadequate. *Hattie Brown v. Vanguard Holding Corp., et al.*, 104 B.R. 609 (Bankr. S.D.N.Y.1989). The only evidence offered in this case is an appraisal of the property post-sale, presumably at a price for a negotiated private sale over a period of time. Yet, there is no evidence of any willing buyer for such price as of the time of the sale. The Plaintiff has not proffered any evidence as to what a foreclosure sale or distressed sale price might bring. It is these sales—foreclosure sales or distressed sales—which provide a much more accurate indication of the value of property being sold at a foreclosure sale. By not introducing any evidence as to what similar properties are worth at foreclosure or distressed sale or that there were willing buyers at any higher price, the Debtor has not met its burden.

Although the Defendant did no more than that which was required by New York State law to advertise the sales to encourage competitive bidding, this Court is at a loss to envision what further actions the Defendant could reasonably have taken which would have increased the sales prices of the Properties at foreclosure sales in a distressed market. Accordingly, in this instance, where a distress sale may have brought a sales price lower than the post-sale appraisal, but which sale price was achieved after the employment of sales efforts which were commercially reasonable, and without any further facts or circumstances which show an egregious fraud on creditors, this Court, in accord with *Lindsay*, will leave the sales undisturbed.

Having determined that the foreclosure sales were in accordance with New York State law and were non-collusive, and having determined that commercially reasonable steps were taken to achieve the highest prices at the foreclosure sales, the Court need not consider the disparity in amount between the sales prices and the post-sale appraisals submitted.

In this case, setting aside this transfer would not give rise to a fairer distribution of this Debtor's equity, but would rather result in a windfall to the unsecured investors and principals who should have foreseen the possibility of foreclosure and the depressed sales prices typically associated

with it when the Debtor could not meet the mortgage payments.

### IV.  CONCLUSION

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. 1334. This matter constitutes a core proceeding under 28 U.S.C. 157(b)(2)(A), (H) and (O).

This Court believes that in order for a debtor or trustee to persuade the Court to find that there has been a fraudulent conveyance pursuant to the intent of Section 548(a)(2)(A) of the Bankruptcy Code regarding a judicially supervised foreclosure sale, there must be more provided to the Court than a post-petition appraisal, or an educated guess, as to the market value of the property.  Such an appraisal alone, without additional supporting evidence of a secret transfer, collusion, actual fraud or some egregious fact or circumstance that cries out for equity, will not be sufficient to overcome the presumption of adequacy of a judicial foreclosure sale conducted in a commercially reasonably manner.

Accordingly, and under all of the facts and circumstances in this case, the Court finds that the properties were transferred for reasonable equivalent value pursuant to Section 548 of the Bankruptcy Code.  The Plaintiff's Complaint is hereby dismissed.

Settle Order in compliance with this opinion.