**In re Joe Frank REECE, Debtor.**

**Joe Frank REECE, Plaintiff,**

**v.**

**William S. SCHARF and Loretto F. Scharf, His Wife, Defendants.**

**Adv. No. 88–0308–BKC–J13.**
**Bankruptcy No. 88–02972–BKC–J13.**

United States Bankruptcy Court,
E.D. Missouri, E.D.

July 12, 1990.

---

Elbert A. Walton, Jr., St. Louis, Mo., for debtor/plaintiff.

Eileen Voss, St. Louis, Mo., Trustee.

Michael W. Flynn, Dan J. Kazanas, St. Louis, Mo., for defendants.

## MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

The matter being considered here is the Plaintiff/Debtor's Amended Complaint to set aside a foreclosure as a fraudulent conveyance and to recover the value which the Debtor believes to be the excess between the amount owed and either the actual value of the real property, or the amount bid at foreclosure.

On April 21, 1989, the Debtor filed a First Amended Complaint in two counts. Count I adopted and incorporated the allegations in the original complaint which asked that the Court set aside a pre-petition transfer of the Debtor's real estate, and requested a money judgment for damages in the amount of $40,000. Count II set forth a request for a judgment in the

amount of $8,711.00 plus costs and attorneys fees, reflecting an alleged excess of proceeds from the foreclosure sale of the real property after satisfaction of the Defendants' note which had been secured by a lien on the foreclosed property.

The Defendant denied substantially all of the Plaintiff's allegations and filed affirmative defenses including a challenge to the Bankruptcy Court's jurisdiction, a request for abstention, and an objection based on collateral estoppel. The issues were submitted on the record after two days of trial to the Court.

Notwithstanding the pleadings, there was little disagreement as to the circumstances of the parties' relationships. In November, 1984, the Plaintiff purchased a parcel of real property and two buildings from his brother for $20,000. The purchase was financed by means of a loan from the Defendants in the amount of $20,000, which was secured by a deed of trust on the lot and two buildings.

In a separate agreement, the Plaintiff and the Defendants agreed that the payments on the note would be made from the profits of certain vending machines located on the first floor of the larger of the two buildings. The Plaintiff missed several payments, and the Defendants instituted foreclosure proceedings.

On February 17, 1988, the Defendants purchased the real estate at the foreclosure sale for the sum of $19,110.34. The debtor was evicted from the premises after the Defendants obtained a non-bankruptcy court order for possession. The Plaintiff then filed his Chapter 13 petition on September 2, 1988.

### Conclusions of Law

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court therefore has jurisdiction to enter this Memorandum and a final Order.

Section 548(a)(2) authorizes a trustee to avoid a transfer of an interest of a debtor made within one year before the date of filing the petition if the debtor received less than a reasonably equivalent value in exchange for the transfer and if the debtor was insolvent or became insolvent as a result of the transfer.

In the absence of an action by the trustee, a Chapter 13 debtor enjoys standing to prosecute an adversary complaint to avoid a fraudulent transfer pursuant to § 548. *In re Robinson*, 80 B.R. 455, 457 (Bankr.N.D.Ill.1987); *In re Pruitt*, 72 B.R. 436, 439 (Bankr.E.D.N.Y.1987).

The transfer of the Debtor's interest in this matter was involuntary. The record has not established that the Debtor's actions in connection with the foreclosure were motivated by a fraudulent intent on his part. The emphasis of the Debtor's case was on the alleged absence of a reasonably equivalent value in exchange for the transfer.

Prior to the foreclosure, the Debtor's income consisted of irregular rent payments from boarders on the premises which was subsequently foreclosed upon, the profit from the operation of a confectionery on the first floor of the larger building and any profit form the vending machines which remained after payment of the note held by Defendants.

The Debtor testified that as a result of the transfer by foreclosure, his boarders were forced to move and he was unable to operate the confectionery at a profit. Therefore, this Court finds and concludes that the Debtor became insolvent as a result of the transfer. *See, In re Uhlmeyer*, 67 B.R. 977 (Bankr.D.Ariz.1986).

The involuntary transfer of the Debtor's interest in the real property was affected upon the foreclosure of the mortgage which occurred within one year before the filing of the petition. *See, In re Hulm*, 738 F.2d 323, 327 (8th Cir.1984), *cert. denied*, 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984). All other statutory requirements having been satisfied, the Debtor's right to a judgment here will depend on the value received in exchange for the transfer.

The sale price at a regularly conducted foreclosure sale cannot automatically be deemed to provide a reasonably equivalent value, even though fraud or collusion

were not shown to have existed. *In re Hulm,* supra at 327. The Bankruptcy Court must determine whether the Defendant received a reasonably equivalent value after a consideration of all the facts and circumstances with respect to the transfer.

■ The Plaintiff's appraiser, Emerson Sutton, stated that he was self-employed in the real estate business. He testified that on January 31, 1989, the date of his inspection, the fair market value of the real property was $52,000. His opinion was based upon a "drive by" inspection, a brief look through one first floor window, an examination of other real estate sales, calculations based upon estimated replacement costs, the income producing potential of the property and the tax assessment value determined by the City of St. Louis. The witness then stated that although he had not inspected the property prior to January 31, 1989, he believed that its fair market value on the date of foreclosure, eleven months earlier, would have been $52,000. On cross examination, however, Defendants' Counsel emphasized several inconsistencies which tainted the reliability of these appraisals.

At the time of the Plaintiff's Appraiser's inspection, the buildings were standing vacant. The Debtor had testified that at the time of foreclosure, eleven months earlier, the buildings were occupied and the structures did not exhibit the holes and other damages which appeared on the Defendants' photographs taken on May 19, 1989. The Debtor's personal testimony clearly suggested that in his opinion, the property was at least more attractive at the time of foreclosure than it appeared to have been at the time of his witnesses' appraisal.

The Debtor's Appraiser stated that it was difficult to find buildings which are exactly identical for comparison in a comparable sales calculation. Consequently, the buildings used in his sales comparisons are located in differing geographic and economic areas, and generally appear to be in considerably better physical condition than the subject property.

The Movant's Appraiser inspected both the interior and exterior of the Debtor's property. The photographs submitted with this appraisal depict a building in need of a considerable amount of structural and cosmetic repair. The comparable sales examined by this Appraiser are more similar to the Debtor's property than those consulted by the Debtor's Appraiser. The *Movant's* Appraiser's opinion of the fair market value at the time of appraisal was $19,000.00. He stated that in his opinion, based upon the condition of the building the value at the time of the foreclosure would have been approximately the same as the value at the time of his inspection.

Upon consideration of the record as a whole, the Court has determined that the most credible estimation of value was presented by the Defendants' witness, and that the fair market value of the property at the time of foreclosure of the Defendants' interests was slightly in excess of $19,000.00.

The record reflects that the Defendants submitted the only bid at the foreclosure sale and acquired the property for the price of $19,110.34. Therefore, the Plaintiff has not established that the Defendants paid less than a reasonably equivalent value or that the foreclosure sale was conducted in other than a commercially reasonable manner. The request to set aside the transfer in connection with the foreclosure will be denied.

### Count II

■ In Count II the Plaintiff has requested a money judgment in the amount of $8,711.84 plus costs and attorney's fees, reflecting an alleged excess of proceeds from the foreclosure sale after satisfaction of the Defendants' lien. The Plaintiff has argued that he is entitled to these excess proceeds pursuant to Section 443.230 RSMo, 1986. The Defendants have submitted the following report of the foreclosure transaction:

| Price paid | | $19,110.34 |
|---|---|---|
| Note balance | $10,399.00 | |
| Attorney fees | 750.00 | |
| Publication costs | 372.08 | |
| Title report | 75.00 | |
| Delinquent taxes | 1,675.51 | |
| Mistaken overbid | 5,838.69 | |
| Subtotal | $19,110.28 | $19,110.34 |

The difference of $0.06 between the price paid and the enumerated disbursements is not explained in this record.

The Defendants have indicated that the amount of $5,838.75 was an error which resulted from the Defendants' agent bidding an amount which represented the outstanding balance owed by the Plaintiff to a separate entity identified as Ron's Vending Company on unsecured loans. The payments other than this overbid were reasonable and were subject to the Defendants' lien of the deed of trust. This record has not presented any basis upon which these amounts are to be set aside.

Pursuant to Section 541 of Title 11 of the United States Code, the Debtor's claim to the excess proceeds became an asset of the Bankruptcy estate upon commencement of this case. Therefore, the Defendants will be ordered to pay the amount overbid to the Bankruptcy Trustee subject to further requests for distribution which may be presented.

### ORDER

Upon consideration of the record as a whole, and consistent with the Memorandum entered in this matter

IT IS ORDERED that this hearing be concluded; and that judgment upon Count I of the Plaintiff's Complaint is entered in favor of the Defendants; and that the Plaintiff's request to set aside the pre-bankruptcy transfer of certain real property based upon fraud pursuant to Section 548 of Title 11 of the United States Code is denied; and

That upon Count II of this Complaint, judgment is entered in part in favor of the Plaintiff, in that the Defendants are to pay to Eileen Voss, the Trustee in this case, the amount of $5,838.75, representing the amount of excess proceeds paid by the successful bidder at the foreclosure sale of the real property which is the subject of this proceeding; and that any further requests with respect to said amount are to be presented as provided for under the Bankruptcy Code.